**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**CHERRY, BEKAERT & HOLLAND, et al., Defendants.**

No. 88–1147–CIV–T–15C.

United States District Court,
M.D. Florida,
Tampa Division.

April 4, 1990.

Alison Berman, Federal Deposit Ins. Corp., Washington, D.C. and Leonard H. Gilbert, Robert Pass, Chris S. Coutroulis, and Mary Stenson Scriven, Carlton, Fields,

Ward, Emmanuel, Tampa, Fla., for plaintiff.

Michael Minkin, Hermelee, Cowart & Minkin, Miami, Fla., for defendants.

## ORDER

ELIZABETH A. JENKINS, United States Magistrate.

THIS CAUSE comes on for consideration of defendant Cherry Bekaert & Holland's ("Cherry Bekaert") Motion to Compel Production of Documents and for Sanctions (Dkt. 138), and Cherry Bekaert's Request for Oral Argument (Dkt. 140) with respect thereto. Cherry Bekaert seeks an order compelling the production of certain documents in the possession of plaintiff which it considers responsive to the following requests for production: Plaintiff's First Request for Production Nos. 4, 6, 8, 9, 10, 26; Plaintiff's Second Request for Production Nos. 2, 13, 16. Cherry Bekaert also seeks sanctions for FDIC's allegedly untimely disclosure and designation of certain documents as privileged.

### I. Introduction

The FDIC has objected to producing certain documents to Cherry Bekaert on grounds of attorney-client privilege and work product doctrine.[1] Because the parties have filed extensive memoranda on the

1. The documents have not been submitted for *in camera* review but are described in sufficient detail in the parties' memoranda and attachments thereto so that a determination as to the discoverability of the documents can be made without the need for *in camera* review, in view of the issues presented.

2. FDIC states that it has already produced the "ITS manual" and the "two-page directors and officers checklist" on November 1, 1989. The undersigned must accept as true these representations of counsel made as officers of the court. Accordingly, Cherry Bekaert's motion to compel, insofar as it addresses these documents is DENIED as moot.

3. In addition, Cherry Bekaert identifies a "log" or "register" "of confidential memoranda" in the possession of the FDIC. The item was referred to in the deposition of John Fernandez taken in the *FDIC v. Kearney* case. The "log" or "register" is not specifically addressed in FDIC's memorandum or in correspondence from the

motion to compel, oral argument is unnecessary. Therefore, Cherry Bekaert's Request for Oral Argument is DENIED. The documents disclosed in a September 12, 1989 letter from FDIC counsel to Cherry Bekaert counsel which were withheld on privilege grounds by the FDIC are:

1. Reports of Criminal Irregularity ("criminal referrals") sent to the Justice Department (attorney-client);

2. Loan "writeups" (attorney-client, work product);

3. Post-closing report, historical analysis, and time line of Park Bank (attorney-client, work product)[2];

4. Witness statements taken by or on behalf of the FDIC and "work papers" (work product)[3];

5. 191 other documents involving communications between Park Bank and its counsel, pre-closing (attorney-client privilege).

### II. Criminal Referrals

█ The FDIC has identified four "Reports of Criminal Irregularity," or "criminal referrals" from FDIC to the U.S. Attorney, as documents which have been withheld from Cherry Bekaert on grounds of attorney-client privilege. FDIC is not asserting the privilege of Park Bank with respect to these documents but its own attorney-client privilege.[4]

FDIC to Cherry Bekaert so it is unclear if the FDIC is withholding this item referred to by Mr. Fernandez on grounds of privilege, and, if so, on what basis.

Therefore, determination of the discoverability of the "log" or "register" of confidential memoranda is DEFERRED and the FDIC is directed to file, within ten (10) days of the date of this order, a supplemental memoranda which sets forth the FDIC's position with regard to this item.

4. As noted in the undersigned's order dated November 28, 1989, it is unclear whether state or federal law of privilege will apply with regard to this action. On the one hand, under Rule 501, Fed.R.Evid., state law on privilege applies with respect to claims and defenses with regard to which state law supplies the rules of decision. Here, FDIC brings claims for accounting malpractice so it would appear that Florida law of privilege would govern. However, under *Trigo v. Federal Dep. Ins. Corp.*, 847 F.2d 1499, 1502

According to the FDIC, the criminal referrals were created by FDIC personnel after the closing of Park Bank and in connection with the loan writeups it prepared. FDIC states that these documents are confidential transmittals to the U.S. Attorney's office by FDIC investigators expressing views that certain criminal activity may have occurred with respect to various transactions at the bank.

Cherry Bekaert makes several arguments as to why it contends that the criminal referrals are not privileged. First, it argues that FDIC has cited no statute or rule which appoints the Criminal Division of the Justice Department or the United States Attorney for the Middle District of Florida as the FDIC's attorney, or, that in making these referrals the FDIC was seeking to become the client of the U.S. Attorney. Second, Cherry Bekaert argues that the criminal referrals were not communications made for the purpose of securing legal opinions, legal services, or seeking legal assistance in some legal proceeding. Finally, Cherry Bekaert argues that the facts disclosed by the FDIC to the U.S. Attorney would have to be disclosed to criminal defendants at some point if the facts transmitted by the FDIC were for the purpose of having the U.S. Attorney institute criminal proceedings.

■ The attorney-client privilege protects confidential communications between a client and his attorney where the communications concern legal advice or tend to disclose information given to the attorney by the client. *In re Grand Jury Subpoena*, 788 F.2d 1511, 1512 (11th Cir.1986). The burden of proof is on the party asserting the privilege to establish the existence of an attorney-client relationship and the confidential nature of the information sought. *Id.* at 1511–1512.

The FDIC cites *Employers Insurance of Wausau v. Federal Dep. Ins. Corp.*, No. Civ–3–85–311 & 312, slip opinion (E.D.Tenn. April 22, 1986) for the proposition that the criminal referrals are protected from disclosure by the attorney-client privilege of the FDIC. The *Wausau* case appears to be the only case directly on point. In *Wausau*, the court noted that the FDIC was obligated to report violations of the criminal laws which it uncovers during a bank investigation. slip op. at 16. In reporting such suspected violations, the court held, the U.S. Attorney acted as the FDIC's lawyer. *Ibid.* The court viewed the FDIC and the Justice Department as working towards a common goal, prosecution of violation of the banking laws, with an identity of legal interests. *Ibid. citing United States v. American Tel. & Tel. Co.*, 86 F.R.D. 603, 616 (D.D.C.1980).

The undersigned concludes that the FDIC's attorney is the Justice Department and its U.S. Attorneys with regard to investigations of bank misconduct and for the referral of suspected criminal violations for prosecution and that the criminal referrals at issue here were disclosed in confidence to the U.S. Attorney's office with the common goal of prosecuting violations of the federal banking laws through the exercise of the FDIC's duty to report violations of such laws. Therefore, the attorney-client privilege applies to the criminal referrals and the FDIC's refusal to produce these documents is proper.[5]

(11th Cir.1988), federal common law governs in cases involving the rights and liabilities of the FDIC acting in its corporate capacity pursuant to a purchase and assumption transaction.

Nevertheless, Florida courts have looked to federal cases for guidance in resolving issues of interpretation concerning privileges. *See e.g. Brookings v. State*, 495 So.2d 135, 139 (Fla. 1986); *Visual Scene, Inc. v. Pilkington Bros.*, 508 So.2d 437, 440 (Fla. 3d DCA 1987). Florida law of attorney-client privilege, insofar as it relates to the basic requirements for its application, does not vary substantially in any event from the requirements discussed in federal cases cited herein. *See e.g. Boyles v. Mid–Florida Television Corp.*, 431 So.2d 627, 638–639 (Fla. 5th DCA 1983), *approved*, 467 So.2d 282 (Fla.1985).

Concerning the work product doctrine, it is a limitation on discovery in federal cases, and federal law provides the primary decisional framework. *See Hickman v. Taylor*, 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947); Rule 26(b)(3), Fed.R.Civ.P.

**5.** See page 606–607, *infra*, for a discussion of the waiver issue as it relates to the alleged untimely disclosure of the documents. Of course, if FDIC intends to introduce any of the documents at issue in this order at trial which it

## III. Loan Writeups, Historical Analyses, Post–Closing Reports, Time Line, Work Papers

### A. Loan Writeups

■ Cherry Bekaert seeks to compel the production of loan "writeups" prepared by FDIC investigators after the closing of Park Bank. The parties apparently agree that the "writeups" include documents referred to as the "four to five page checklists," the individual "loan histories," and the "six part memoranda." It appears that the loan histories were a part of the six-part memoranda which in turn made up the bulk of each loan writeup. Thus, the discoverability of all of these documents making up the loan writeups shall be considered together.

The FDIC argues that the loan writeups are protected from disclosure by the work product doctrine and by the attorney-client privilege.

Cherry Bekaert contends that the documents are not protected work product because deposition testimony shows that the loan writeups were not created at the direction of counsel and contain only factual material which has been stripped of any opinions. In addition, even if the documents are found to have been created in anticipation of litigation, Cherry Bekaert argues that it has a substantial need for the documents and that the underlying documents are not the equivalent of the loan writeups and related documents prepared by FDIC. Cherry Bekaert fails to address the contention that the loan writeups are protected by the attorney-client privilege.

■ The work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or by or for that party's attorney acting for his client. *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir.1979); Rule 26(b)(3), Fed.R.Civ.P. Under Rule 26(b)(3), litigation documents which contain the mental impressions, conclusions, opinions, and legal theories of counsel (or a party's representative) are afforded absolute immunity from discovery. *See e.g. Board of Trustees of Leland Stanford, Jr. Univ. v. Coulter Corp.*, 118 F.R.D. 532, 534 (S.D.Fla. 1987).[6]

A party may discover, under Rule 26(b)(3), other relevant, unprivileged documents which are prepared in anticipation of litigation by or for another party or that party's representative, only upon a showing of a substantial need for the documents and the inability to obtain the requested documents by other means without undue hardship. Rule 26(b)(3), Fed.R.Civ.P.

■ The work product doctrine does not protect documents prepared in the ordinary course of business of a party. *Fann v. Giant Food, Inc.*, 115 F.R.D. 593, 596 (D.D.C.1987); *Schmidt–Tiago, supra* at 734–735.

While the FDIC states that the writeups were created primarily "in contemplation of filing lawsuits against officers and directors of Park Bank ... and were not used for or prepared for use [in this case]," FDIC admits that "some of the loans that are the subject of these "write-ups" overlap with the "negligence" and/or "liability" loans in this case." (*See* Dkt. 139, Memorandum in Support of Cherry Bekaert's motion to compel, exhibit "5", letter dated September 12, 1989 from FDIC counsel to Cherry Bekaert counsel, pp. 2–3) (hereafter, "September 12, 1989 letter"). Therefore, the writeups may perhaps contain information relevant in the instant action.

With respect to the loan writeups in question, it appears that they were all cre-

---

has claimed to be privileged or present testimony regarding privileged communications at trial, or uses privileged documents to refresh recollection, the privilege could be deemed waived and the documents required to be produced at an appropriate time. *See State of Colo. ex rel. Woodard v. Schmidt–Tiago Const. Co.*, 108 F.R.D. 731, 734–735 (D.Colo.1985); *see generally Marshall v. United States Postal Service*, 88 F.R.D. 348, 350 (D.D.C.1980). The attorney-client privilege was intended as a shield, not a sword. *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980).

**6.** Most of the documents at issue here which the undersigned finds qualify for work product protection were prepared by FDIC employees and representatives rather than counsel.

ated by the FDIC after the closing of Park Bank in 1986. According to deposition testimony from FDIC officials, portions of the transcripts of which are appended to Cherry Bekaert's brief (Dkt. 139, exhibits "A", "B", "C"), the writeups were prepared pursuant to FDIC policy following a factual review of the various loans, review by the lead investigator, and by the supervisor. (*See* depo. of Dee Ann Doher [7] taken in *FDIC v. Kearney,* No. 87–1898–Civ–T–13A (M.D.Fla.), pp. 79–82; depo. of Teresita Crockett,[8] taken in *Kearney,* pp. 144, 149–151).

Other testimony indicates, however, that the writeups were prepared with an eye towards litigation and that every report generated by the FDIC investigation department is directed to FDIC counsel. (*See* Doher depo. pp. 24–25; Crockett depo. p. 143).

A review of the deposition testimony concerning the loan writeups and brief summaries concerning these documents contained in the letter from FDIC counsel to Cherry Bekaert's counsel dated September 12, 1989, as well as other submissions of the parties leads to the conclusion that these documents were prepared in anticipation of litigation.

It is not clear, however, to what extent the loan writeups contain legal opinions or mental impressions of counsel "or other representative of a party concerning the litigation." Rule 26(b)(3), Fed.R.Civ.P. The documents appear to have been created for review by FDIC's Washington legal counsel. (*See* Doher depo. p. 25). However, Cherry Bekaert's contention that the writeups have been stripped of all opinions is not supported in the testimony. According to the testimony of Ms. Doher, although the document is "pretty much factual," it could "possibly" contain recom-

mendations including those made as a result of meetings between "Washington office attorneys and people related to all of the claims." (Doher depo. pp. 43, 55).

It is unnecessary, however, to conduct an *in camera* review of the loan writeups to determine whether the work product doctrine protects these documents from disclosure because the undersigned concludes that these documents are protected from disclosure by the attorney-client privilege. The writeups appear to be communications made in confidence by FDIC investigators to their counsel for the purpose of seeking legal advice concerning possible lawsuits. The deposition testimony of Dee Ann Doher indicates that the writeups were prepared for review by Washington FDIC counsel. In preparing the loan writeups, Ms. Doher testified that the examiners:

> ... look to develop a claim, a legal claim, based on the losses that the institution has suffered, and you do that through investigation and through case writeups. And investigations is reading the exam reports ... Then, ultimately, what you have written up, if it should be pursued or not, is a legal matter, and our Washington office counsel read it.

(Doher depo., pp. 24–25).

The writeups, according to Ms. Doher, contain facts such as the following:

> ... the date [the note] was disbursed, and bring it on up to current and tell us what happened. Was collateral released from the loan when it shouldn't have been? Was the guarantor released when it shouldn't have been? Are they in default ... Capitalizing interest....

(Doher depo., p. 25). In preparing the loan writeups, the examiner utilizes a two-page "directors and officers negligence checklist" which aids the examiner as to what to look for in a loan file and what to put in the

---

7. Dee Ann Doher, at the time of the investigation of Park Bank, was a Bank Liquidation Specialist and Department Head. *See* Dkt. 139, exhibit "A" for portions of her deposition transcript in *FDIC v. Kearney* ("Doher depo."). Cherry Bekaert states that its counsel was permitted to sit in on the depositions of certain witnesses whose testimony is appended to their memorandum in support of the motion to com-

pel. However, Cherry Bekaert counsel did not participate in questioning of witnesses.

8. Teresita Crockett, at the time of the investigation of Park Bank, was a Supervising Liquidation Specialist in the field and the Lead Investigator. *See* Dkt. 139, exhibit "B" for portions of the deposition transcript from *FDIC v. Kearney* ("Crockett depo.").

writeup. For example, the checklist, according to Ms. Doher, contains such items as "failure to perfect security; failure to monitor disbursements; failure to state purpose of loan." (Doher depo. p. 27).

There is no suggestion on the part of Cherry Bekaert, nor in the deposition testimony, that FDIC has waived the attorney-client privilege with respect to the loan writeups other than in connection with the untimely disclosure issue.[9] In fact, as noted above, Cherry Bekaert has not even addressed the attorney-client issue in its motion to compel.

It appears, therefore, that the loan writeups were made in confidence by FDIC representatives and sent to FDIC's counsel for the purpose of obtaining legal advice. Thus, the writeups and other documents included in this category are protected by the attorney-client privilege.

The conclusion reached above is supported by the only case found which deals with the discoverability of loan writeups (described as the "six-part memoranda"). The magistrate in *Federal Dep. Ins. Corp. v. Butcher*, No. Civ. 3–84–1020 slip opinion (E.D.Tenn. Sept. 15, 1986), *aff'd*, 116 F.R.D. 203, 204 (E.D.Tenn.1987), cited by the FDIC, held that not only were the writeups protected from disclosure by the work-product doctrine, they were absolutely privileged under the attorney-client privilege. *Id.* at 6.

The magistrate in *Butcher* concluded:

The factual inquiries and opinions contained in the six-part memoranda were generated for counsel so that counsel could give the FDIC advice on how to proceed. Some of these memoranda were generated before this lawsuit was filed. Some were generated afterwards. But that does not matter, all were generated by FDIC employees to counsel for FDIC, acting as such, at the direction of the employees' FDIC superiors, in order to secure legal advice from counsel.

*Butcher*, slip op. at 6–7, *citing Upjohn Co. v. United States*, 449 U.S. 383, 394, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981) (attorney-client privilege protects the giving of information to the lawyer, at the lawyer's request, to enable him to give informed advice).

Accordingly, the undersigned concludes that the loan writeups are protected from discovery by the attorney-client privilege.

**B. Post–Closing Reports and Historical Analysis**

■ The "post-closing reports on Park Bank" and historical analysis and time line of Park Bank, according to the FDIC, consist of documents prepared by FDIC personnel at the direction of and under the supervision of FDIC counsel in contemplation of litigation against Park Bank officers, directors, "JK entities," and "JRG." [10] According to the FDIC the reports contain a "brief synopsis of the status of the Park Bank receivership" and include "materials necessary for the preservation of FDIC's legal rights in connection with Park Bank."

FDIC contends that the documents were not prepared in connection with claims against Cherry Bekaert, but that they are protected from discovery in this case under the work product doctrine and the attorney-client privilege.

It is, however, unnecessary to determine to what extent the documents might be protected by the work product doctrine because, as with the loan writeups and related documents discussed above, the undersigned concludes that the post-closing reports, historical analysis, and Park Bank time line are protected from disclosure by the attorney-client privilege.[11]

The deposition testimony of Ms. Crockett supports the conclusion that the post-closing reports, historical analysis and Park Bank time line were prepared for FDIC

---

9. *See* pages 606–607, *infra*.

10. "JK entities" apparently refers to companies owned by or somehow connected with John Kearney. It is unclear from the documents submitted what "JRG" refers to.

11. The FDIC states in its response that no time line was ever generated for Park Bank that showed when loans failed.

counsel, at their direction, for the purpose of securing legal advice:

(Witness) ... at the initial stages of a bank closing, there are usually several requests from our Washington counsel to prepare certain reports.

(Q) What kinds of reports are those? What kind of reports are generally requested when a bank closes?

(Witness) An overall history of the bank. First of all, there is what we call the post-closing report, which is a report that says the bank closed on such-and-such a date, and these are the directors that are still here. This is how much the bank has lost, and this is what we find on a brief—a one-week review as to why the bank closed.... We package all that up and send it up to them within a couple of weeks.

(Crockett depo. p. 145–146).

Further, Ms. Crockett recalls at least one specific request for a report concerning Park Bank from Washington legal counsel. (Crockett depo. p. 146). In addition, as noted above, Ms. Crockett testified that every report concerning a failed bank generated by her department was sent to a lawyer. (Crockett depo. p. 143). There is no evidence that once the reports were completed they were viewed by any other persons so as to waive the attorney-client privilege.[12]

As with the loan writeups, Cherry Bekaert has not suggested that the attorney-client privilege was waived in any respect with regard to these documents other than in connection with the untimely disclosure issue.[13] In fact, Cherry Bekaert does not argue why the documents are not protected by the attorney-client privilege, focusing instead on the work product doctrine argument.

## C. Personal Work Papers of Mr. Fernandez

■ The next group of documents sought by Cherry Bekaert are the personal work papers created by FDIC investigator John Fernandez. Mr. Fernandez testified at deposition in the *Kearney* case that he kept a personal file consisting of notes concerning Park Bank transactions with John Kearney ("Kearney credits")[14] which he was reviewing as an investigator for FDIC. (Depo. of John Fernandez, taken in *Kearney* case, p. 63)[15] ("Fernandez depo."). Mr. Fernandez referred to these documents as "work papers" and it is apparent that the notes were taken to aid in the preparation of loan writeups on the various credits reviewed should Washington counsel direct that writeups be created. (Fernandez depo. pp. 63, 71).

■ Documents prepared before litigation is formally commenced are "prepared in anticipation of litigation" and, therefore, protected from discovery under the work product doctrine if, at the time they are prepared, there is a substantial possibility that litigation will occur and that commencement of that litigation is imminent. *Securities and Exchange Comm'n. v. World–Wide Coin Investments, Ltd.*, 92 F.R.D. 65, 66 (N.D.Ga.1981).

Although it appears that no writeups were created for at least some of these loans, the notes were evidently taken for the purpose of preparing loan writeups and there existed a substantial possibility that litigation would occur and was imminent with regard to these loans because the FDIC had closed Park Bank and these were loans which Mr. Fernandez had been asked to investigate.

**12.** Because this category concerns only post-closing reports and not post-closing loan files in general, FDIC will presumably have to disclose all other documents in its post-closing loan files which have not specifically been identified as privileged, pursuant to the March 1, 1990 order of the undersigned (Dkt. 177).

**13.** *See* pages 606–607, *infra.*

**14.** John E. Kearney was chairman of the board of Park Bank and a member of the executive loan committee in 1984.

**15.** John Fernandez had the title of "liquidation assistant" with the FDIC and assisted in investigations of Park Bank loans after the bank's closing. Portions of his deposition testimony in the *Kearney* case are appended to Cherry Bekaert's memorandum as exhibit "C".

Mr. Fernandez testified that he prepared these "work papers" with every credit he reviewed. These notes were not "personal files" in the sense that Mr. Fernandez would feel free to take them with him if he left FDIC's employ. (Fernandez depo. p. 63). Accordingly, the undersigned concludes that the "work papers" referred to by Mr. Fernandez are protected by the work product privilege because they were prepared in anticipation of litigation by a representative of the FDIC.

■ Further, the undersigned concludes that Cherry Bekaert has not shown substantial need for the work papers in that FDIC has produced the underlying loan documentation on which the conclusions of the investigators are based. Cherry Bekaert has made no attempt on its own to depose Mr. Fernandez so as to question him concerning the specific loans which are the subject of this lawsuit, nor have they made a specific showing of unavailability of this witness. *See Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir.1984) (no showing of substantial need for document when party had made no effort to depose person who made statement). Therefore, Cherry Bekaert's motion to compel with respect to the work papers is DENIED.

*IV. Witness Statements*

■ Cherry Bekaert seeks production of various witness statements taken by an FDIC agent in late 1987. Statements were taken from Park Bank officers and directors Gary Froid and Frank Byars. The statement of Jim Matthews, referenced by Cherry Bekaert, was according to FDIC counsel, not taken on behalf of the FDIC but by Park Bank shareholders in connection with the case of *Jenkins v. Jacobs.* It is not clear whether the other individuals listed as having statements taken by the FDIC in 1987—Grant C. Hunt, Peter Dawson, and Steve Jeatran—were officers and directors of Park Bank.

The FDIC states in its September 12, 1989 letter, that these statements, with the exception of the Matthews statement, were taken at the direction of FDIC counsel for the sole purpose of pursuing a bond claim against Aetna Casualty and Surety, and were withheld as work product in that case.

The FDIC argues that the witness statements are protected from disclosure under the work product doctrine. Cherry Bekaert contends that the statements are similar to statements taken pursuant to investigations conducted by insurance companies of accidents which courts have found discoverable. In addition, Cherry Bekaert argues that it has substantial need for the statements because the passage of time would affect the memories of these witnesses.

FDIC counters the contention of substantial need for the statements by arguing that Cherry Bekaert has made no attempt to depose these individuals and that when the statements were taken the loan transactions which were the subject of the questions occurred quite some time before the statements were taken.

The undersigned must accept FDIC's assertion, uncontroverted by Cherry Bekaert, that the statements were taken by FDIC to aid in the preparation of anticipated, specific litigation: the bond claim against Aetna. Therefore, the statements would be work product at least with respect to the bond litigation. *See Castle, supra* at 1467. There is a split of authority among the various circuits regarding whether the work product protection extends to litigation other than that for which the documents were created. *See Levingston v. Allis–Chalmers Corp.*, 109 F.R.D. 546, 552 (S.D.Miss.1985) (discussing split in circuits). One line of cases holds that the work product doctrine applies only if the materials were prepared in anticipation of the very suit before the court. *See e.g. Honeywell, Inc. v. Piper Aircraft Corp.*, 50 F.R.D. 117, 119 (M.D.Pa.1970). Another line of cases holds that there is a perpetual protection for work product extending beyond the termination of litigation for which the documents were prepared. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483–484 (4th Cir.1973); *In re Murphy*, 560 F.2d 326, 335 (8th Cir.1977).

A third, intermediate, group of cases holds that subsequent or other litigation must involve closely related issues for the work product doctrine to apply. *See Republic Gear Co. v. Borg–Warner Co.*, 381 F.2d 551, 557 (2d Cir.1967). Although the Eleventh Circuit Court of Appeals has evidently not taken a position on this issue, one Middle District of Florida case has taken the intermediate approach in considering whether the work product doctrine extends to suits other than the action for which the documents were originally created. *See In re Grand Jury Proceedings*, 73 F.R.D. 647, 653 (M.D.Fla.1977) (subsequent litigation found to be distinct and, therefore, work product did not operate to protect documents in second case).

It appears that the witness statements taken in connection with the Aetna bond claim involved at least some of the same issues as the case at bar so as to satisfy the closely related test for application of the work product privilege. It appears from the description of the contents of the statements in FDIC's brief that the statements, taken shortly after Park Bank was closed, contain references to lending practices, procedures, and policies of Park Bank. Thus, the witness statements taken by the FDIC fall within the work product doctrine.

With respect to the statement taken from Mr. Matthews, it does not appear to be the work product of the FDIC but rather that of Park Bank shareholders in their suit against former Park Bank officers and directors in separate litigation. However, according to the FDIC's September 12, 1989 letter, the Matthews statement is subject to a protective order in the *Jenkins v. Jacobs* case.[16] Pending a supplemental response to be filed by the FDIC, a ruling on the discoverability of the Matthews statement is deferred.

■ As to the witness statements taken by representatives of FDIC which are covered by the work product privilege, the undersigned concludes that Cherry Bekaert has not shown a substantial need for these documents or the inability to obtain the equivalent from other sources without undue hardship. Cherry Bekaert has apparently made no attempt to depose the individuals who made the statements or even interviewed them to determine if their testimony would even be helpful to Cherry Bekaert's case. *See Castle, supra* at 1467.

The work product doctrine exists to protect the integrity of the adversary system by safeguarding the fruits of an attorney's trial preparation materials from discovery by the opposing party. *In re Subpoena Duces Tecum*, 738 F.2d 1367, 1371 (D.C. Cir.1984). If Cherry Bekaert wishes to obtain the testimony of the witnesses who made the statements, it should proceed to take their depositions rather than rely on FDIC's efforts.

Accordingly, Cherry Bekaert's motion to compel with regard to the witness statements referenced in FDIC's September 12, 1989 letter is DENIED.

### V. Documents Prepared by Park Bank's Lawyers

■ The FDIC has identified 191 documents prepared by or for attorneys for Park Bank prior to the closing of Park Bank with regard to which FDIC has claimed the attorney-client privilege of Park Bank. The undersigned has, in prior orders, upheld the right of the FDIC to assert the attorney-client privilege of Park Bank.[17] It appears that both parties consider the undersigned's determination concerning the FDIC's right to assert Park Bank's attorney-client privilege dispositive concerning the discovery of these 191 documents. Cherry Bekaert's only argument for disclosure of these items is that they were not disclosed until September 12, 1989. The undersigned will address the tardy disclosure issue below.

---

**16.** It is not clear where the *Jenkins* case is filed and what the terms of the protective order are. FDIC is directed to file a supplemental response within ten (10) days of the date of this order addressing these issues and indicating why it believes the Matthews statement ought to be subject to the protective order.

**17.** *See* orders dated November 28, 1989 (Dkt. 145) and March 1, 1990 (Dkt. 177).

With regard to the 191 documents listed in the September 12, 1989, all of the items listed appear to involve correspondence in some form between Park Bank officers or directors and the bank's legal counsel for the purposes of obtaining legal advice. There is no suggestion by Cherry Bekaert that the privilege has been waived by disclosure of any of this correspondence. Accordingly, the 191 documents are protected from disclosure under the attorney-client privilege of Park Bank and Cherry Bekaert's motion to compel with respect to these documents is DENIED.

## VI. Request for Sanctions

In support of its request for sanctions, Cherry Bekaert states that the FDIC violated the undersigned's May 16, 1989 order by failing to identify by May 31, 1989 all privileged documents being withheld by FDIC. Cherry Bekaert argues that the disclosure of the documents that are the subject of this motion to compel as being withheld on privilege grounds in September and October, 1989 rather than in May violated the earlier order and justifies the sanctions of disallowing the claim of privilege and assessing the fees and costs associated with bringing the motion to compel.

The FDIC, on the other hand, argues that earlier disclosure and identification of many of the documents as privileged was precluded by the vague and ambiguous requests for production and contemporaneous correspondence which, it contends, led FDIC to believe that Cherry Bekaert was not interested in discovering post-closing documents. Further, FDIC claims that its failure to identify with specificity the particular criminal referrals withheld on grounds of privilege was due to oversight.

With respect to adherence to the May 16, 1989 order, FDIC states that it did not specifically identify the post-closing documents that were withheld on privilege grounds because (1) it did not interpret the request for production as calling for such documents; (2) that the transcript of the May 15, 1989 discovery conference reveals that Cherry Bekaert's focus was on pre-

closing regulatory activity. In addition, FDIC argues that Cherry Bekaert similarly violated the terms of that order by failing to identify any work-product documents being withheld despite claiming work product protection regarding similar requests for production drafted by FDIC.

Finally, FDIC argues that even assuming that its disclosure of the documents withheld on privilege grounds was untimely, Cherry Bekaert has suffered no prejudice and that waiver of an asserted privilege is not an appropriate sanction for untimely assertion of a privilege.

Under the circumstances, the undersigned concludes that the sanctions requested by Cherry Bekaert are unwarranted. First, it appears that FDIC was under the impression, at least at the time of the May 15, 1989 discovery conference, that the post-closing documents were not at issue and were not sought by Cherry Bekaert. Second, with respect to at least some of the requests for production, FDIC did in fact raise objections to production based on work product and attorney-client privileges.

Most importantly, however, it does not appear that Cherry Bekaert has been prejudiced by the late disclosure of the documents which are the subject of this motion to compel. The FDIC would still have resisted discovery of the post-closing documents, necessitating a motion to compel. In addition, Cherry Bekaert has identified no particular harm resulting from the late disclosure and now has ample time to conduct any additional discovery, such as seeking to take the depositions of the individuals making the statements withheld by FDIC.[18]

Finally, despite the authority cited by Cherry Bekaert in its memorandum, binding former Fifth Circuit authority suggests that failure to assert the attorney-client privilege in a timely manner does not waive the privilege even when the privilege is asserted for the first time in a motion for reconsideration of a district court's order to produce. *Southern Railway Co. v. Lanham*, 403 F.2d 119, 133–134 (5th Cir.1968),

---

**18.** The discovery deadline has now been extended, by order of the court, to September 7, 1990.

*reh. denied (en banc)*, 408 F.2d 348 (5th Cir.1969).

Accordingly, the undersigned concludes that neither binding authority nor the particular circumstances warrant the imposition of the sanctions requested by Cherry Bekaert.

It is, therefore,

ORDERED:

(1) that Cherry Bekaert & Holland's Motion to Compel Production of Documents and for Sanctions (Dkt. 138) is DENIED except insofar as it concerns the items described in paragraphs 3 and 4, below, as to which a decision is DEFERRED pending the filing of a supplemental memorandum;

(2) that insofar as the motion to compel concerns the "ITS manual" and the "two-page directors and officers checklist" is DENIED as moot.

(3) that with respect to the discovery of the statement of Jim Matthews, the FDIC shall, within ten (10) days of the date of this order, file a supplemental memorandum addressing the issues related to its discovery and indicating why it believes the Matthews statement to be subject to the protective order in *Jenkins v. Jacobs;*

(4) that with respect to the "log" or "register" "of confidential memoranda," determination of the discoverability of this document(s) is DEFERRED and the FDIC shall set forth the FDIC's position and cite authority with regard to this item in the same supplemental memorandum required above concerning Mr. Matthews' statement to be filed within ten (10) days of the date of this order;

(5) that Cherry Bekaert's Request for Oral Argument (Dkt. 140) is DENIED;

DONE and ORDERED.