The **REGENCY OF PALM BEACH, INC., Plaintiff,**

v.

**QBE INSURANCE CORPORATION, Defendant.**

No. 08–81442–CIV–MARRA/JOHNSON.

United States District Court, S.D. Florida.

June 4, 2009.

Daniel S. Rosenbaum, John Marcus Siracusa, Joseph William Janssen, III, Melissa Devlin, Richard Chambers Valuntas, Katzman, Garfinkel, Rosenbaum, LLP, West Palm Beach, FL, for Plaintiff.

Evelyn Maureen Merchant, Patrick Edward Betar, William S. Berk, Capri Trigo, Berk Merchant & Sims PLC, Coral Gables, FL, Catherine Deborah Bain, North Palm Beach, FL, Daniel Jordan Simon, Raoul G. Cantero, III, White & Case LLP, Miami, FL, for Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DOCUMENTS FROM QBE INSURANCE CORPORATION AND/OR FLORIDA INTRACOASTAL UNDERWRITERS

LINNEA R. JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the court on Plaintiff's Motion to Compel Documents from QBE Insurance Corporation and/or Florida Intracoastal Underwriters (DE 21), which is now ripe for adjudication. After considering the parties' arguments, the court grants the relief sought by Plaintiff.

1. Defendant does not deny Plaintiff's character-

### I. BACKGROUND

Plaintiff, a multi-unit cooperative residence located in Palm Beach, Florida, brought this action for declaratory judgment, breach of contract, and breach of the implied warranty of good faith and fair dealing against Defendant as a result of alleged significant damage caused by Hurricane Wilma, which struck Palm Beach County on October 24, 2005. Upon agreement of counsel, Andrew A. Bertucci appeared for the taking of his deposition on April 23, 2009, as a corporate representative for Defendant, as well as in representation of Florida Intracoastal Underwriters, Defendant's local underwriter. (DE 21 at 2). Plaintiff issued subpoenas *duces tecum* in connection with both depositions, requesting the entire file relating to The Regency of Palm Beach, Inc. from both representatives, as well as "[a]ll documents, including but not limited to your underwriting file relating to the condition of the property known as The Regency of Palm Beach, Inc." from Defendant's representative. At the time of Mr. Bertucci's appearance for deposition, Defendant provided Plaintiff with two privilege logs: one being a typed, two page listing identifying protection from production, and the other one consisting of two handwritten pages without identifying any applicable protection addressing disclosure of the listed items. (DE 21 at 2). Plaintiff seeks production of documents identified in the typed privilege log as Bates stamped FIU 235–252, and in the handwritten listing as FIU 351–352.

#### a. The FIU 235–252 Documents.

Plaintiff indicates that the FIU 235–252 documents "include an invoice and a report from Tom Gore, dated March 18, 2005," and identifies Mr. Gore as an employee of Peninsula Insurance Bureau who was hired by Mr. Bertucci on behalf of Defendant to evaluate a claim by Plaintiff as a result of damages caused by Hurricane Jeanne in 2004.[1] (DE 21 at 2–3; DE 22 at 2, ¶ 4; DE 23 at 2). Defendant contends that it has already produced documents within FIU 239–252, but excluded the Gore invoice and the report,

ization or date of the documents.

identifying those items as FIU 235–238. (DE 22 at 2, ¶ 4).

In its Motion, Plaintiff argues that Mr. Bertucci admitted in his deposition testimony that when the FIU 235–252 documents were prepared, neither he nor Mr. Gore anticipated that litigation would ensue, and that the documents in question "were prepared in the normal course of evaluating [Plaintiff's Hurricane Jeanne] claim." (DE 21 at 3). Defendant, however, identified the FIU 235–252 documents as work product in the second page of its type-written privilege log, arguing in its Response that the invoice and report at issue "were prepared in relation to [the] Hurricane Jeanne claim made by Plaintiff and not Hurricane Wilma." (DE 21–4 at 2; DE 22 at 2, ¶ 4). Alternatively, Defendant argues that the Gore invoice and report "are wholly irrelevant to breach of contract actions," alleging that the "subject matter is a first party insurance coverage claim," which also causes the documents to be irrelevant. Plaintiff, nonetheless, contends that the Gore report prepared in connection with Hurricane Jeanne is part of a claim by Plaintiff which, even though not yet paid, has not resulted in litigation. (DE 23 at 3, § A). In addition, Plaintiff claims that Mr. Gore's Hurricane Jeanne report "is entirely relevant" to this matter because it "will show the condition of the [Regency] building one year prior to Hurricane Wilma which bears direct relevance to [Defendant's affirmative defenses] of deterioration and decay." [2] (DE 23 at 5, § B). Finally, Plaintiff contends that Defendant did not file a timely objection as to the relevancy of these documents, thereby waiving it, since the handwritten privilege log did not identify any privilege protection at all.[3] (DE 21 at 5–6). Because Plaintiff does not deny in its Reply that there has been a partial production of the FIU 239–252 documents as alleged by Defendant, the court will focus its argument in the remaining documents, i.e., the Gore invoice and report, which Defendant identifies as FIU 235–238.

### b. *The FIU 351–352 Documents.*

Plaintiff describes the FIU 351–352 documents as a facsimile transmitted to the Florida Department of Insurance by Mr. Bertucci. There does not appear to exist a discrepancy between the parties as to the description of these items. (DE 21 at 3; DE 22 at 2, ¶ 5). Nonetheless, while not denying that the documents are "public records," Defendant takes the position that it "should not be compelled to produce them." (DE 22 at 5, § C). Plaintiff, on the other hand, alleges that Defendant should not engage in the dilatory practice of forcing it to obtain the documents through a Freedom of Information Act request. (DE 23 at 6, § C).

## II. *STANDARD OF REVIEW*

■ The Federal Rules of Civil Procedure strongly favor a full and broad scope of discovery whenever possible, allowing a party to obtain discovery of "any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985).[4] "Relevancy" under Rule 26(b)(1) is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may

---

**2.** Defendant's Sixth Affirmative Defense indicates exclusion of coverage on the basis of " 'wear and tear,' 'decay' 'deterioration' and the like." (DE 8 at 8).

**3.** In its Response, Defendant identifies the handwritten privilege log as being "temporary" and indicates that it prepared it "out of an abundance of caution" because at the time of Mr. Bertucci's deposition, the witness "had provided a number of documents to Defense counsel that were not in their possession and had not yet been reviewed by Defense counsel." (DE 22 at 1). Defendant further indicates that the claim of privilege for the documents in the handwritten list was made "with the understanding that the privilege log would be updated and finalized."

(DE 22 at 2). Plaintiff concedes that Defendant has amended its privilege log, but "still refuses to produce many documents which are not protected by any privilege," adding that Defendant asserts "a new, albeit merit less, objection upon the grounds of relevancy." (DE 23 at 2). It is unknown to the court when and under what circumstances there was any amendment to the privilege log, since neither party provides that information, nor a copy of an amended log.

**4.** It is a basic tenet that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted).

■■■ Indeed, "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.... Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund,* 437 U.S. at 351, 98 S.Ct. 2380. In short, information can be relevant and, therefore, discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States,* 502 F.2d 506, 509–10 (5th Cir.1974) (citations omitted).[5]

The work product doctrine, first articulated in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), has been codified under Fed.R.Civ.P. 26(b)(3), protecting the disclosure of materials prepared in anticipation of litigation by a party or by its representative, which includes its "attorney, consultant, surety, indemnitor, insurer, or agent." Fed.R.Civ.P. 26(b)(3)(A). The doctrine "reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.' " *United Kingdom v. United States,* 238 F.3d 1312 (11th Cir.2001) (citing *Hickman v. Taylor,* 329 U.S. at 510, 67 S.Ct. 385). In performing his duties, it is essential for a lawyer to work "with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," to and including assembling information and sifting through facts to separate what the lawyer considers to be relevant and irrelevant, to prepare a legal theory, and to plan strategy. *Platypus Wear, Inc. v. Clarke Modet & Co., Inc., Hickman v. Taylor,* 329 U.S. at 510–11, 67 S.Ct. 385. An attorney's thoughts, therefore, must remain "inviolate." *Id.* at 511, 67 S.Ct. 385.

Nonetheless, "[w]here relevant and nonprivileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of [a] case, discovery may be properly ... had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts.... Or they might be useful for purposes of impeachment or corroboration." *Hickman v. Taylor,* 329 U.S. at 511, 67 S.Ct. 385. In such instances, "production might be justified where the witnesses are no longer available or can be reached only with difficulty." *Id.* If production of such material were to be precluded, "the liberal ideas of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning." *Hickman v. Taylor,* 329 U.S. at 511–12, 67 S.Ct. 385. To overcome the protection afforded by the work product doctrine a petitioner must show both a "substantial need" for the information and "undue hardship" in obtaining it. Fed.R.Civ.P. 26(b)(3); *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464, 1467 (11th Cir.1984) (citations omitted).

■■■ Additionally, there are two recognized forms of work product under Fed. R.Civ.P. 26(b)(3): fact work product, protecting information gathered in anticipation of litigation, and opinion work product, consisting of an attorney's mental impressions, legal theories, and/or opinions. *Calderon v. Reederei Claus–Peter Offen,* No. 07–61022–CIV, 2008 WL 4194810, at *2 (S.D.Fla. Sept. 11, 2008). On the other hand, opinion work product "enjoys nearly absolute protection." *Id.* (citing *Cox v. Admn'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1421–22 (11th Cir.1994), *modified on other grounds,* 30 F.3d 1347 (11th Cir.1994)). A court, however, may order a production after a showing of good cause.[6] Fed.R.Civ.P. 26(b)(1). In addition, even though a party seeking discovery needs to establish "adequate reasons" to obtain the information sought (*Hickman v. Taylor,* 329 U.S. at 512, 67 S.Ct. 385), the party who asserts the work product protection bears the burden of establishing that the doctrine applies *Calderon v. Reederei Claus–Peter Of-*

---

5. Fifth Circuit decisions as they existed as of the close of business on September 30, 1981, are binding precedent on all federal courts within the Eleventh Circuit. *Bonner v. City of Prichard, Alabama,* 661 F.2d 1206, 1207 (11th Cir.1981).

6. Such ordering of discovery is to protect "against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed.R.Civ.P. 26(b)(3)(B).

*fen,* 2008 WL 4194810, at *2 (citations omitted); *Auto Owners Ins. Co. v. Totaltape, Inc.,* 135 F.R.D. 199, 201 (M.D. Fla.1990) (citing *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir.1984)).

▪ Moreover, the work product privilege does not attach automatically to any document sent to an attorney. *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.,* No. 06–20976–CIV, 2007 WL 4557158, at *6 (S.D.Fla. Dec. 21, 2007). Also, a real, as opposed to a speculative, concern must be shown that an attorney's thought processes pertaining to pending or anticipated litigation will be exposed through discovery, and that burden "cannot be met through conclusory statements." *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.,* 2007 WL 4557158, at *6 (quoting *Hunter's Ridge Golf Co. v. Georgia–Pacific Corp.,* 233 F.R.D. 678, 682–83 (M.D.Fla.2006)). Finally, the doctrine does not apply to documents prepared in a party's ordinary course of business. *FDIC v. Cherry, Bekaert & Holland,* 131 F.R.D. 596, 600 (M.D.Fla.1990); *Atlanta Coca–Cola Bottling Co. v. Transamerica Ins. Co.,* 61 F.R.D. 115, 118 (N.D.Ga.1972).

### III. *DISCUSSION*

▪ Here, there is no question that Defendant has pled an affirmative defense based on denying coverage on the basis of " 'wear and tear,' 'decay,' 'deterioration,' and the like." At the same time, Defendant does not deny that there has never been a claim based on Plaintiff's alleged damages resulting from Hurricane Jeanne. Thus, it logically follows that the condition of Plaintiff's building at the time of the alleged damage from Hurricane Wilma is closely connected to the condition resulting from the effect of Hurricane Jeanne, which purportedly damaged the building one year before.[7]

▪ In addition, Defendant, through Mr. Bertucci, admits that the report in question was prepared in the normal course of Defendant's business. Also, Defendant does not even hint in the slightest way to the court that providing Plaintiff with copies of the Gore invoice and report dated March 18, 2005, contained within FIU 235–252, and identified by Defendant as FIU 235–238, would compromise in any way the defense strategy in this matter or expose counsel's thought processes. Thus, the undersigned finds that Defendant has not borne the required burden to establish any work product privilege related thereto.

Further, Mr. Bertucci acknowledges that the items in question were not prepared in anticipation of litigation. Thus, this further adds to Defendant's total failure to show any nexus whatsoever between the documents and the applicability of the work product privilege. Also, the court finds that the dates pointed out by Plaintiff in its argument are significant and speak for themselves. As earlier noted, the Gore report and invoice bear a date of March 18, 2005, and Plaintiff indicates that Mr. Bertucci stated under oath that he did not anticipate any litigation related to this matter until October of 2007. (DE 21 at 5). Defendant does not deny Mr. Bertucci's statement or date of realization of anticipating litigation, and the uncontroverted fact is that one and one-half year transpired between the creation of the documents at issue and any hint of litigation. Finally, Plaintiff does not have any other way of obtaining these items. Fed.R.Civ.P. 26(b)(3); *Castle v. Sangamo Weston, Inc.,* 744 F.2d at 1467. As a result, the court finds that the Gore report and invoice at issue under FIU 235–238 are not protected by the work product doctrine.[8] *FDIC v. Cherry. Bekaert & Holland,* 131 F.R.D. at 600; *Atlanta Coca–Cola Bottling Co. v. Transmaerica Ins. Co.,* 61 F.R.D. at 118.

Furthermore, in its argument, Defendant incorrectly relies on *TOWER 1515 CONDO.*

---

7. The court also notes the absence of any allegation relative to repairs made for any claimed Hurricane Jeanne damage, which allows the inference that the building had sustained damage for which Defendant might be responsible but has not yet addressed. That places at issue the validity of Defendant's Sixth Affirmative Defense, and the allegation of breach of contract and bad faith by Plaintiff.

8. The court reiterates that it does not find it necessary to address production of the other documents included originally within Plaintiff's Motion, FIU 239–252, because of Defendant's representation that it has produced them and Plaintiff's silence on the issue.

*APTS. ASS'N. INC. v. QBE INS. CORP.*, 2006 U.S. Dist. LEXIS 73401 (S.D.Fla.2006) to argue that the FIU 235–238 documents are not relevant. (DE 22 at 4, § B). In *Tower 1515*, the District Court declined to find that the defendant and non parties involved in that matter had forfeited objections based on privilege and relevancy by default or "by a blanket failure to carry their burden of proof." [9] 2006 U.S. Dist. LEXIS 73401, at *5. Also, the *Tower 1515* litigation contained counts for declaratory judgment and breach of contract, causing the District Court to indicate, on the basis of state law, that "[u]nless and until the underlying coverage claim is determined, and a statutory bad faith action lodged under § 624.155, Florida Statutes, the insurer's claim file is irrelevant and beyond the scope of permissible discovery." 2006 U.S. Dist. LEXIS 73401, at *6. Here, the situation is different. Count IV of Plaintiff's Complaint contains allegations of breach of the implied warranty of good faith and fair dealing. Also, the case at bar contains an affirmative defense of coverage exclusion based on the structural condition at the time of the claim, which, coupled with the fact that Plaintiff had to file suit in an attempt to enforce the coverage on its building, is tantamount to a denial of the claim.

Indeed, the decisions in *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691 (S.D.Fla.2007) and *The Atrium on the Ocean II Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2007 U.S. Dist. LEXIS 74962 (S.D.Fla.2007) are more closely applicable to this matter. In *Milinazzo*, the court acknowledged the existence of the *Tower 1515* decision, finding it inapplicable and pointing out that *The Atrium* court declined to follow the *Tower 1515* decision because of the narrow addressing of waiver of objections without an analysis on discovery of a claim file. 247 F.R.D. at 696; 2007 U.S. Dist. LEXIS 74962, at *6. Further, *The Atrium* court indicated that "[u]nder Federal Rule of Evidence 401 'relevant evidence' is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," adding that "state law cases on the substantive issue of discovery of a claim file … are not binding on this Court." *Id.*, & 5–6. Similarly, in *Milinazzo* the court held that documents in a claims file were discoverable and that documents "related to the 'investigation, processing, analysis' and ultimate denial of Plaintiff's claim are relevant to the extent they relate to Plaintiff's breach of contract action." 247 F.R.D. at 696. The undersigned concurs with the analyses in *Milinazzo* and *The Atrium* decisions, finding them supportive of the proposition that the Gore report and invoice, documents FIU 235–238, are discoverable.

■ As to the facsimile correspondence between Mr. Bertucci and the Florida Department of Insurance, it is true, as Defendant alleges, that Plaintiff may obtain the FIU 352–352 documents "by other means" (DE 22 at 5, § C), i.e., a Freedom of Information Act request. Nonetheless, it appears to the court to be totally out of line that Defendant should concede that the items are discoverable and at the same time suggest that Plaintiff engage in the protracted effort of obtaining them directly from the Florida Department of Insurance when Defendant has the items readily available within its possession, custody and control. Accordingly, the court finds Defendant's posture of denying production of two pages to be not only unreasonable but to border on bad faith, given the fact that Defendant has them and does not deny that Plaintiff is entitled to review them. Consequently, the court finds that it is reasonable, logical, efficient, and not burdensome to have Defendant provide the FIU 351–352 documents to Plaintiff.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion to Compel (DE 21) is **GRANTED.**

2. Defendant shall provide Plaintiff with the documents comprised by FIU 235–238

---

9. The court notes that the *Tower 1515* decision indicates that the Magistrate Judge initially overruled that defendant's objections because of a failure to respond timely to plaintiff's motion to compel, to respond to subpoenas, and pursuant to S.D. Fla. L.R. 7.1(C), which requires the filing of a memorandum of law when opposing a motion. 2006 U.S. Dist. LEXIS 73401, a *3–4. The Magistrate Judge in *Tower 1515* also indicated that, alternatively, even if considering the merits of the objections presented, the parties "failed to carry their burden of proving the elements of the privileges asserted." 2006 U.S. Dist. LEXIS 73401, at *3.

and FIU 351–352 within five (5) days of the date of this Order.