**Ronald A. SCHACHAR, M.D., et al., Plaintiffs,**

v.

**AMERICAN ACADEMY OF OPTHALMOLOGY, INC., et al., Defendants.**

**No. 84 C 4770.**

United States District Court, N.D. Illinois, E.D.

April 8, 1985.

James E. Elliott, Witherspoon, Aikin &
Langley, Hereford, Tex., Terry M. Grimm,

Robert G. Foster, Winston & Strawn, Chicago, Ill., for plaintiffs.

Peter S. Hendrixson, James B. Lynch, John S. Hibbs, Dorsey & Whitney, Minneapolis, Minn., William F. Conlon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This antitrust case arises out of an allegedly anticompetitive attempt to limit the availability of a surgical procedure for correcting myopia known as radial keratotomy. Defendants American Academy of Opthalmology, Inc. and others have brought a motion to compel plaintiffs to answer an interrogatory regarding communications concerning a similar action captioned *Vest v. Waring*, Civ. No. 82–325A currently pending in the Northern District of Georgia, Atlanta Division, before Judge Robert H. Hall, and to produce medical records for all radial keratotomy patients. Plaintiffs have claimed attorney-client privilege, work product immunity under Fed.R. Civ.P. 26(b)(3), physician-patient privilege, privacy interests, and undue burdensomeness. For the reasons stated below, the court rejects most but not all of these claims, and the motion to compel is therefore granted in part.

### I. Physician-Patient Records

In Document Request #23, defendants requested each individual plaintiff physician to turn over all documents and records concerning radial keratotomy patients in his possession. Plaintiffs refused to comply, and offered instead "standardized information sheets" giving condensed information about the surgery and patients in question with the patients' names redacted. Defendants maintained that this information was insufficient to evaluate the plaintiff physicians' surgical experiences, and therefore requested that plaintiffs produce the original records with the names and other identifying features of the patients blocked out and replaced by control numbers. Plaintiffs again refused to comply, and this motion followed.

Plaintiffs first argue that the documents requested are shielded by a physician-patient privilege, and cite statutory privileges recognized by the various states where the named plaintiffs have performed radial keratotomies. This case is a federal question case, however, and federal common law rather than state law governs the question of privilege. Fed.R.Evid. 501. The physician-patient privilege is not recognized by federal common law. *United States v. Mancuso*, 444 F.2d 691, 695 (5th Cir.1971); *Robinson v. Magovern*, 83 F.R.D. 79, 90 (W.D.Pa.1979); *In re Grand Jury Subpoena*, 460 F.Supp. 150, 151 (W.D.Mo.1978). Plaintiffs' blanket assertion of physician-patient privilege is therefore without merit.

Although the physician-patient privilege is not recognized under federal common law, at least one district judge has suggested that federal courts should nonetheless recognize state-created expectations of privacy where to do so would pose no substantial cost to the federal interests involved. *Lora v. Board of Education*, 74 F.R.D. 565 (E.D.N.Y.1977) (Weinstein, J.). Given defendants' agreement to eliminate all identifying information from the patient records, however, the court finds any intrusions into privacy expectations outweighed by the federal policies supporting free and full discovery.

Plaintiffs also assert that their patients' rights to privacy prevents them from tendering patient records. For support they cite *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). That case involved a challenge to a New York State statute that required copies of prescriptions of all drugs with a lawful and unlawful market to be filed with the State Health Department. The prescriptions included the names, ages, and addresses of the patients. The court recognized that there is a constitutionally protected zone of privacy in avoiding disclosure of personal matters, but found no violation of those interests. *Id.* at 599–00, 97 S.Ct. at 876.

The Court held that the state interest in eradicating drug abuse outweighed the minimal intrusion into the users' privacy interests, and pointed to the state's security precautions against disclosure as further protection of the users' privacy. *Id.* at 600–01, 97 S.Ct. at 876–77.

In the present case, given the total redaction of patient identities from the records, there is less of an intrusion into privacy interests than existed in *Whalen,* where all of the identifying information was transmitted. Plaintiffs' argument that producing these records will have a "chilling effect" on the willingness of their patients to see them does not dictate a different result. In *Whalen,* the court addressed the argument that concern over disclosure might cause some patients to refuse needed medication, and found that possibility insufficient to outweigh the state's interest. In the present case, the lack of identifying information in the requested records makes the possibility of a chilling effect even more remote. The plaintiffs' privacy argument is therefore rejected.

■ Plaintiffs finally argue that production of the documents requested should be disallowed because of the undue burden production would place on plaintiffs. The party objecting to a discovery request bears the burden of showing that the request is unduly burdensome. *FTC v. Texaco, Inc.,* 555 F.2d 862, 882 (D.C.Cir.), *cert. denied* 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). Plaintiffs have made no factual showing that discovery here is any more burdensome than is typical in responding to discovery requests in complex cases. The documents requested all relate to a particular surgical procedure, and many of these records were already separately filed for transmittal to the Keratorefractive Society (KRS) for study. Plaintiffs' suggestion that the information would be better sought by deposition is without merit. As noted by another court in response to the same argument, "providing ... information by interrogatories may effect judicial economy and economic savings to the parties. [Parties] will know whom they have to depose; unnecessary depositions may be avoided; ... important conversations, communications and documents may be highlighted; delay may be avoided; and the issues for trial may be narrowed." *In re Shopping Carts Antitrust Litigation,* 95 F.R.D. 299, 307–08 (S.D.N.Y.1982). The court agrees with this reasoning, and concludes that the requested medical records should be disclosed.

■ Defendants have also requested the plaintiff Keratorefractive Society (KRS), an association engaged in the study of radial keratotomy, to produce all medical records it has in its files. KRS has reiterated the same grounds of privilege over these documents raised by the individual physicians, which the court again rejects. KRS also seems to argue for a special privilege concerning professional organizations engaged in medical research. KRS bases this argument on *Farnsworth v. Proctor & Gamble Co.,* 101 F.R.D. 355 (N.D.Ga.1984). In that case, the Center for Disease Control (CDC), a non-party to the litigation, successfully moved under Fed.R.Civ.P. 26(c) to withhold from disclosure the names and addresses of 300 female patients involved in a study on toxic shock syndrome. That case, however, involved a request for disclosure of names; the CDC only filed its motion *after* it had voluntarily given the requesting party files with personal identifiers deleted. Moreover, the medical records in that case included intimate details as to the patients' sexual and menstrual histories which presumably would not have been revealed absent expectations of confidentiality. *Id.* at 357. KRS's attempt to extend *Farnsworth* to the present request must fail.

## II. Communications Relating to the Atlanta Litigation

In Interrogatory Request No. 4, defendants requested plaintiffs to report various communications and produce various documents concerning the civil action captioned *Vest v. Waring,* Civ. No. 82–325A (N.D.Ga.). That action involves the same antitrust issues being litigated here and some of the same named defendants. *See*

*generally Vest v. Waring,* 565 F.Supp. 674 (N.D.Ga.1983). Plaintiffs initially responded to this interrogatory with a blanket assertion of attorney-client privilege and work product privilege, based on both individual and joint interests. After defendants submitted the present motion, however, plaintiffs elaborated on their refusal, and revealed that one of the attorneys in *Vest,* Robert Meals, represents plaintiffs Schachar and KRS in the present litigation, and has had ongoing communications with the other attorneys in this litigation. Plaintiffs' attorneys in this action have exchanged documents and work product with the Atlanta lawyers doing similar work.

■ On the basis of this elaboration, defendants have conceded that some of the sought-after communications between Schachar and Meals are privileged. The court further finds that communications between Meals and KRS agents, if made in confidence, would also be protected. Defendants still maintain, however, that no joint privilege exists in this case as to either work product or attorney-client relationship, and that in any event many of the requested communications and documents requested from Meals would not fall within the scope of either privilege.

■ In *FTC v. Shaffner,* 626 F.2d 32 (7th Cir.1980), the Seventh Circuit set forth the circumstances under which an attorney-client privilege can be claimed. The party claiming privilege must show that the communication "(1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity [not in the presence of others]; (3) was related to legal matters; and (4) is at the client's instance permanently protected." *Id.* at 37. Since the assertion of the privilege is a barrier to full discovery, those assertions should be "strictly construed within the narrowest possible limits consistent with the logic of the principle." *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 323 (7th Cir.) (en banc), *cert. denied,* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963); *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan,* 90 F.R.D.

21, 28 (N.D.Ill.1980). The party claiming the privilege has the burden of showing the specific facts giving rise to the privilege; blanket claims of privilege are improper. *Radiant Burners,* 320 F.2d at 319; *In re Shopping Cart Antitrust Litigation,* 95 F.R.D. at 305.

The work product doctrine, formally codified in Fed.R.Civ.P. 26(b)(3), is often found in conjunction with the attorney-client privilege and absolutely protects against disclosure "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." In addition, Rule 26(b)(3) protects the confidentiality of all documents prepared by or for an attorney in anticipation of litigation except upon a showing of substantial need and undue hardship, which the defendants have not made.

■ It is now well established that attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege. *United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *Continental Oil Co. v. United States,* 330 F.2d 347, 350 (9th Cir. 1964); *Western Fuels Ass'n v. Burlington Northern Railroad Co.,* 102 F.R.D. 201 (D.Wyo.1984). Although originally limited to cases of actual co-defendants, courts have applied the joint defense privilege to cases of "potential" litigation as well. In *In re LTV Securities Litigation,* 89 F.R.D. 595 (N.D.Tex.1981), for example, the court upheld a joint privilege where LTV's counsel had made otherwise privileged communications in the presence of LTV's auditor, who was the target of an identical SEC investigation. In *Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26 (D.Md.1974), the court found no waiver of attorney-client privilege where the communications in question had occurred before a joint licensor of the plaintiff-client. As explained in *Transmirra Products Corp. v. Monsanto Chemical Co.,* 26 F.R.D. 572, 579 (S.D.

N.Y.1960), the joint privilege is meant to recognize "the advantages of, and even, the necessity for, an exchange or pooling of information between attorneys representing parties sharing such a common interest in litigation, actual or prospective." 26 F.R.D. at 579. *See also Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 555 (N.D.Ill.1964).

■ Defendants maintain that there is insufficient mutuality of interest between the *Schachar* plaintiffs and the *Vest* plaintiffs for a joint privilege to arise regarding work product and attorney-client confidences. The court disagrees. *Vest* was initially filed as a class action; Rule 23 certification was postponed while the parties explored settlement. The present plaintiffs—putative members of the *Vest* class—were in effect parties to that litigation and may still stand to gain if that case successfully proceeds as a class action. Moreover, the factual bases for the two cases are sufficiently similar that the attorneys should be allowed to coordinate prosecution efforts to some extent without jeopardizing the confidentiality of their work product or their shared confidences.

Nonetheless, any joint privilege still extends only to *confidential* communications from a client to his attorney, i.e., information communicated with the understanding that it would not be revealed to others, and to matters constituting protected attorney work product. Much of the defendants' requests concern communications among co-plaintiffs about the *Vest* case; those statements are not protected merely because they might reiterate matters confided in the parties' attorneys as well. Moreover, defendants also request any information which was released to the press, media, or public: if such information exists, then plaintiffs may clearly not invoke privilege as to such statements.

■ In their opposition brief, plaintiffs list six categories of documents they claim to be privileged. Category I consists of billing statements for legal services rendered on behalf of KRS by various attorneys, including a description of the type of service provided, the cost of such services, and the checks paying for such services. Such communications do not relate to confidential matters and are clearly unprivileged. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir.1978); *In re LTV Securities Litigation*, 89 F.R.D. 595, 603 (N.D.Tex.1981). Plaintiffs' Exhibit H (Affidavit of James Elliott) suggests that plaintiffs question the relevancy of these documents. That question is not before the court, however, and the plaintiffs may be able to raise this objection with defendants in a Local Rule 12(d) conference. Absent a showing of irrelevancy, however, the documents should be produced.

■ Category II consists of unprivileged documents obtained by Robert Meals in the course of discovery on which Meals has made handwritten comments reflecting his mental impressions and legal conclusions. A party cannot render unprivileged documents free from discovery by handwriting protected material on them. Meals should either locate clean copies or block out his notes and submit the documents for defendants' inspection.

Category III consists of one ten-page protective order entered in *Vest v. Waring* on November 2, 1984. The order specifically mentions the firm of Witherspoon, Aikin & Langley, which represents several of the plaintiffs in the present action, and purports to be binding on the Schachar plaintiffs as putative class members. The protective order was stipulated to by the parties in *Vest* and filed under seal. The court will defer to Judge Hall in Atlanta and allow the protective order itself to remain free from discovery, as well as any documents received by plaintiffs' attorneys subject to that order's condition of nondisclosure. At the risk of stating the obvious, only documents produced in that case after November 4, 1984 would be protected from disclosure, and the plaintiffs may not use the order to shield documents from discovery which freely came into their possession, i.e., other than through a promise of confidentiality. As to such papers, plain-

tiffs are free to seek a protective order here but may not frustrate the defendants' legitimate discovery requests by invoking the protective order entered in *Vest*.

Defendants claim that they have been advised that the protective order is limited to a draft of certain settlement papers and no more. The court is presently in no position to ascertain the truth of this statement. If future disputes about the scope of the protective order continue, however, the court will request Judge Hall to release the order for this court's in camera inspection, and will not hesitate to impose sanctions if plaintiffs have in fact overstated the scope of that order.

Category IV is a letter from Leo Bores, M.D., a plaintiff and designated class representative in the *Vest* litigation, sent to Ronald Schachar. According to plaintiffs' Exhibit H, the letter discusses matters under Judge Hall's protective order and is dated December 5, 1984. Again, the court knows of no privilege attending communications between co-plaintiffs in a civil action unless such actions were part of a joint communication with an attorney. The document is therefore unprivileged and should be released, notwithstanding the fact that it may discuss matters contained in Judge Hall's protective order.

Category V consists of the transmittal letter from Meals to Elliott forwarding Judge Hall's protective order, and a statement for professional services rendered by Meals' firm. These inter-attorney communications are not protected by the attorney-client privilege since they do not appear to communicate any confidences, nor do they reasonably fall within the definition of protected work product. Again, the plaintiffs may raise relevancy objections with defendants in private conference. Absent a showing of irrelevancy, however, the documents should be produced.

Category VI involves correspondence between Robert Meals and various parties: Schachar, Schachar's attorney Eric Weisberg, a client Ronald Jensen, and various putative class members. The court accepts as sufficient that the letters from Meals prepared in anticipation of this or the *Vest* litigation would fall within the definition of work product and have not been waived by disclosure to other parties with a common interest. However, plaintiffs must make a document-by-document objection rather than asserting a blanket privilege. Where the letters in this category are written by clients and not by Meals, plaintiffs must make some showing that the letters in question concern confidential matters related to the seeking of legal advice before the attorney-client privilege will apply.

### III. Sanctions

Defendants have requested that the court award them costs and reasonable attorneys' fees incurred in filing this motion. Under Fed.R.Civ.P. 37(a)(4), such expenses shall be awarded to a party prevailing on a motion to compel discovery unless the resisting party was "substantially justified" in opposing the motion. If, as happened here, the motion is granted in part only, the court may apportion the reasonable expenses incurred among the parties and persons in a just manner. *Id.*

In the present case, plaintiffs were on weak legal ground in refusing to turn over patient records. Nonetheless, the court understands plaintiffs' unwillingness to turn over such records given the state law restrictions on their ability to do so. Plaintiffs were, moreover, justified in asserting a joint prosecution privilege even though they were undoubtedly overbroad in their assertion of the privilege, and failed to identify the specific grounds for their objections. The court therefore determines that the just apportionment of expenses from this motion would be to let them lie where they have fallen.

### Conclusion

The motion for an order compelling discovery is granted in part and denied in part, in accordance with this opinion. The defendants' request for sanctions is denied.

It is so ordered.