508 So.2d 437 (1987)
VISUAL SCENE, INC., Myron Orlinsky and Peter Patraka, Petitioners,
v.
PILKINGTON BROTHERS, Plc., Chance Pilkington Limited, and Metro Corp., Respondents.
No. 87-413.
District Court of Appeal of Florida, Third District.
May 19, 1987.
Rehearing Denied June 30, 1987.
*439 Cypen & Cypen and Wayne A. Cypen, Wilmer, Cutler & Pickering and Roger M. Witten, M. Carolyn Cox, Bruce M. Berman, James Sottile IV and Mark J. Leimkuhler, Washington, D.C., for petitioners.
Morgan, Lewis & Bockius and William L. Gardner and Peter Buscemi, Washington, D.C., and Lowell L. Garrett and Nancy A. Copperthwaite, Miami, Bailey, Dawes & Hunt and Mercedes C. Busto, for respondents.
Before BARKDULL, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The petitioner Visual Scene, Inc. (VSI), a plaintiff in the trial court,[1] seeks review by certiorari of an order compelling it to produce certain documents which it claims are protected from discovery by the attorney-client and work product privileges. The respondents Pilkington Brothers, plc. (Pilkington) and its wholly-owned subsidiary, Chance Pilkington, Ltd. (Chance), successfully argued below that because the documents in question recount communications concerning the litigation between VSI, the plaintiff, and its adversary, Metro Corp., a defendant, no theory of "joint defense" privilege[2] can obtain, and the documents are discoverable. Finding that the trial court's ruling departs from the essential requirements of the law, we grant the petition for writ of certiorari and quash the order under review.

I.
VSI, a distributor of non-prescription sunglasses to drugstores throughout the United States, sued the respondents Pilkington and Chance and a third defendant, Metro, alleging, in essence, that Chance supplied defective photochromic glass blanks to Metro and that Metro negligently processed the glass. It appears from the ensuing counterclaims and cross-claims that Pilkington and Chance maintain that the lenses were not defective, but that they were negligently processed and stored by Metro and that VSI exacerbated any problem by improperly handling the finished sunglasses; Metro (agreeing to this extent with VSI) maintains that the glass supplied by Chance was defective and, predictably, that Metro was free from negligence. Thus, VSI and Metro are united in their respective claims that the glass manufactured *440 by Chance was defective, although, as VSI has freely conceded, its "interests in this litigation are opposed to Metro's in significant respects," that is, VSI intends to prosecute its claim that Metro was negligent in processing the glass supplied by other defendants. It is in this not unusual setting that the assertions of privilege against the Pilkington and Chance request for production must be judged.

II.

A.
It is well understood that matters that are covered by the attorney-client privilege retain their privileged status until the protection of the privilege has been waived by the client. In most cases, a voluntary disclosure to a third party of the privileged material, being inconsistent with the confidential relationship, waives the privilege. United States v. American Telephone & Telegraph Co., 642 F.2d 1285 (D.C. Cir.1980). An exception to this general waiver rule, variously called the "common interests," "joint defense," or "pooled information" exception, enables litigants who share unified interests to exchange this privileged information to adequately prepare their cases without losing the protection afforded by the privilege. See Western Fuels Association v. Burlington Northern Railroad Co., 102 F.R.D. 201 (D.Wyo. 1984), and cases cited. Under this exception, clients and their respective attorneys sharing common litigation interests may exchange information freely among themselves without fear that by their exchange they will forfeit the protection of the privilege.[3] Since persons with common litigation interests are likely to have an equally strong interest in keeping confidential this exchanged information, the common interests exception to waiver is entirely consistent with the policy underlying the privilege, that is, to allow clients to communicate freely and in confidence when seeking legal advice. Quite obviously, when a member of the common interest group discloses this information to a non-member, a waiver of the privilege, as in the ordinary case, occurs.
Courts have recognized the common interests exception where the group members were criminal co-defendants, United States v. McPartlin, 595 F.2d 1321 (7th Cir.1979); Hunydee v. United States, 355 F.2d 183 (9th Cir.1965); civil co-defendants, Western Fuels Association v. Burlington Northern Railroad Co., 102 F.R.D. 201; In re LTV Securities Litigation, 89 F.R.D. 595 (N.D.Tex. 1981); companies that had individually been summoned before a grand jury, Continental Oil Co. v. United States, 330 F.2d 347 (9th Cir.1964); co-parties to potential litigation, In re LTV Securities Litigation, 89 F.R.D. 595; members of a class of plaintiffs pursuing separate litigation in state and federal courts, Schachar v. American Academy of Ophthalmology, 106 F.R.D. 187 (N.D.Ill. 1985); and defendants being sued in separate actions, Transmirra Products Corp. v. Monsanto Chemical Co., 26 F.R.D. 572 (S.D.N.Y. 1960). While it is true, as Pilkington and Chance contend, that no court has extended the common interests exception to protect communications between a plaintiff and a defendant and their attorneys, neither has any court yet been called upon to address the question now before us, namely, whether the claims of both the plaintiff VSI and the defendant Metro, that glass supplied by the defendants Pilkington and Chance was inherently defective, demonstrate sufficient commonality of interest to permit a pooling of information between VSI and Metro without the loss of the protection of the attorney-client privilege, notwithstanding VSI's claim, hostile to Metro, that Metro was negligent in processing this defective glass.
Although, as we have said, the precise question presented by this case has not yet been addressed, we think the answer to the *441 question is strongly suggested by decisions that conclude that the common interests exception applies where the parties, although nominally aligned on the same side of the case, are antagonistic as to some issues, but united as to others. For example, in United States v. McPartlin, 595 F.2d 1321, McPartlin, a state legislator, and Ingraham, a corporation chairman, among others, were indicted for bribery in connection with a sludge-hauling contract. Benton, an unindicted co-conspirator, was to testify for the prosectution. Although the defenses of Ingraham and McPartlin were otherwise incompatible, it was important to both that Benton's credibility be undermined. To that end, an investigator for Ingraham's attorney interviewed McPartlin. At trial, over McPartlin's objection on the ground of attorney-client privilege, Ingraham attempted to introduce in support of his own defense statements made by McPartlin to the investigator. In holding the attorney-client privilege applicable to McPartlin's statements made in confidence to the investigator for his co-defendant's counsel for a purpose related to both defenses, the court reasoned that the common interests privilege does not require that the defenses be in all respects compatible, but is applicable "where different lawyers represent clients who have some interests in common," id. at 1336 (emphasis in original). The rule does not apply, however, "where there is no common interest to be promoted by a joint consultation, and the parties meet on a purely adversary basis." Id. (emphasis in original).
Again, in Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.1985), an insurer and its two insureds, defendants in a securities action, were represented by three different attorneys. Correspondence between one of the insureds and counsel for the insurer was held to be privileged as part of a joint defense effort even though the attorney, as in McPartlin, represented a client with some adverse interests. The court pointed out that no privilege attaches "where the parties' interests are completely adverse and it is clear that the statements were not made in the expectation that the relationship was confidential." Id. at 788 (emphasis supplied). Compare, e.g., Government of the Virgin Islands v. Joseph, 685 F.2d 857 (3d Cir.1982) with Hunydee v. United States, 355 F.2d 183.
This same reasoning was extended in In re LTV Securities Litigation, 89 F.R.D. 595, where the court rejected the claim of the plaintiffs (shareholders of LTV) that information divulged at joint conferences between the defendants (LTV and its accounting firm) and their respective attorneys was not privileged because shared by "defendants whose liability may arise from different acts or omissions, or who may assert crossclaims against each other." Id. at 604. The court pointed out that even if the corporation and its accountants later became antagonists in the litigation  aligned in part on opposite sides  they would nonetheless be able to protect their prior shared confidences from disclosure to third parties.
It appears, then, that in deciding whether shared information should be protected from disclosure to the third party, one must first answer the questions whether the communication was "made and maintained in confidence under circumstances where it is reasonable to assume that disclosure to third parties was not intended," In re LTV Securities Litigation, 89 F.R.D. at 603-04, and whether the information was exchanged "for the limited purpose of assisting in their common cause," id. at 604. In the present case, the intention of VSI and Metro to keep confidential from the rest of the world information shared by them for use in furthering their joint theory of liability against Pilkington and Chance is evidenced by an affidavit attesting to a before-the-exchange agreement stating their intention to maintain confidentiality and to use the information only in preparation for trial on those issues common to both.[4] To extend the common interests *442 privilege to parties aligned on opposite sides of the litigation for another purpose is not inconsistent with any policy underlying the attorney-client privilege and merely facilitates representation of the sharing parties by their respective counsel. Sharing parties on opposite sides of litigation, being uncertain bedfellows, run a greater than usual risk that one may use the information against the other should subsequent litigation arise between them, see In re a Grand Jury Subpoena Duces Tecum Dated November 16, 1974, 406 F. Supp. 381 (S.D.N.Y. 1975), yet there is no sound reason not to protect from the rest of the world  more narrowly, Pilkington and Chance  information intended by VSI and Metro to be kept confidential and to be used to further the common litigation interests.

B.
In contrast to the attorney-client privilege, designed to protect the confidential relationship between the client and his counsel, the work-product privilege is designed to promote the adversary system by protecting an attorney's trial preparations, not necessarily from the rest of the world, but from an opposing party in litigation. United States v. American Telephone & Telegraph Co., 642 F.2d 1285. The common interests privilege relates not only to attorney-client materials, as we have discussed, but also to an attorney's work product. Western Fuels Association v. Burlington Northern Railroad Co., 102 F.R.D. 201. Because the purposes of the two privileges are different, a waiver of the attorney-client privilege, designed to protect client confidentiality, does not in itself constitute a waiver of the work product privilege, designed "to protect the legal craftsman in the product of his labors." Transmirra Products Corp. v. Monsanto Chemical Co., 26 F.R.D. at 578. Thus, a disclosure made in preparation for trial does not waive the work product privilege unless it is "inconsistent with the maintenance of secrecy from the disclosing party's adversary ... [that is, that it] substantially increases the possibility of an opposing party obtaining the information." United States v. American Telephone & Telegraph Co., 642 F.2d at 1299; see In re Subpoenas Duces Tecum, 738 F.2d 1367 (D.C. Cir.1984).
In determining whether the work product privilege has been waived, "[c]ourts ... have looked to whether the transferor and transferee share `common interests' in litigation,[5] and to whether the disclosure is consistent with `maintaining secrecy against opponents.'" United Technologies Corp. v. National Labor Relations Board, 632 F. Supp. 776, 784 (D.Conn. 1985) (quoting United States v. American Telephone & Telegraph Co., 642 F.2d at 1299). Compare Grumman Aerospace Corp. v. Titanium Metals Corp., 91 F.R.D. 84 (E.D.N.Y. 1981) (work product privilege waived by disclosure) with Stix Products, Inc. v. United Merchants & Manufacturers, Inc., 47 F.R.D. 334 (S.D.N.Y. 1969) and United Technologies Corp. v. National Labor Relations Board, 632 F. Supp. 776 (work product privilege not waived by disclosure). But, as in the case of the attorney-client privilege, it is not a sine qua non to a finding that the parties have a common interest in work product and are thus entitled to the protection afforded by the privilege, that the parties be co-plaintiffs or co-defendants in the suit, aligned on the same side of the litigation. Instead, the definition of "common interests"
"should not be construed as narrowly limited to co-parties. So long as transferor *443 and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary. When the transfer to a party with such common interests is conducted under a guarantee of confidentiality, the case against waiver is even stronger."

United States v. American Telephone & Telegraph Co., 642 F.2d at 1299-1300.
Applying this more expansive definition of common interests, the court in GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46 (S.D.N.Y. 1979), held that disclosure by defendant GAF to the plaintiff United States of a memorandum prepared by GAF's counsel concerning documents GAF had obtained by discovery from Eastman Kodak in GAF's separate suit against Kodak did not waive the work product privilege. The court found that even if GAF disclosed its memorandum to its party opponent, the United States, the probability that Kodak, its party opponent in the other suit, would obtain the information did not appear to be substantially increased. Because the United States was specifically barred by statute from revealing the information, disclosure by GAF was not inconsistent with maintaining secrecy of GAF's work product vis-a-vis Kodak.

III.
Based on the foregoing authorities and analysis, we find that VSI and Metro share a common interest in respect to their claims that Pilkington and Chance supplied defective glass and conclude that information exchanged by VSI and Metro in respect to this common interest and with an understanding that the information not be disclosed is protected from disclosure by both the attorney-client and work product privileges, notwithstanding that in another respect VSI and Metro are adversaries in the litigation and aligned as plaintiff and defendant respectively. Accordingly, the trial court's order requiring VSI and Metro to reveal this information to Pilkington and Chance departs from the essential requirements of the law and is quashed.
Certiorari granted; order under review quashed.
NOTES
[1] The plaintiff-petitioner Visual Scene, Inc. is a corporation whose principal shareholders, officers, and directors are the plaintiff-petitioners Myron Orlinsky and Peter Patraka. They will be referred to jointly as VSI. Additionally, we point out that Metro Corp. is a respondent in these proceedings in name only and, in fact, has adopted the position taken by VSI.
[2] The "joint defense" privilege, or exception to the doctrine of waiver of privilege, is also called the "common interests" or "pooled information" privilege or exception. It is most often referred to as the "joint defense" privilege because its most frequent application is to co-defendants defending against civil or criminal charges. Although less frequently seen, the "common interests" privilege also applies to co-plaintiffs. Schachar v. American Academy of Ophthalmology, 106 F.R.D. 187 (N.D.Ill. 1985).
[3] Where one party in such a relationship makes a statement to the attorney for another party to the relationship, for the limited purpose of the "pooled information" situation, the attorney for one becomes the attorney for the other. United States v. McPartlin, 595 F.2d 1321 (7th Cir.1979). Thus, the confidentiality enjoyed by a client with his own attorney is extended to communications with any attorney representing another in the group.
[4] Of course, the mere existence of an agreement between parties to keep documents confidential is not, in itself, sufficient to protect them from discovery under a claim of privilege. See Chubb Integrated Systems, Ltd. v. National Bank, 103 F.R.D. 52 (D.D.C. 1984) (where plaintiff, because expeditious, disclosed all documents to defendant under agreement to review documents for privilege as to some after inspection, voluntary disclosure to adversary waived privilege); Gruman Aerospace Corp. v. Titanium Metals Corp., 91 F.R.D. 84 (E.D.N.Y. 1981) (confidentiality agreements for settlement, as distinguished from litigation, purposes do not alone immunize materials from discovery).
[5] Of course, where it is found that the parties sharing the information have no common interests, the work product privilege is deemed waived. See, e.g., In re Subpoenas Duces Tecum, 738 F.2d 1367.