## In re INDIANTOWN REALTY PARTNERS, LIMITED PARTNERSHIP, Debtor.

**Indiantown Realty Partners, Limited Partnership, Plaintiff,**

v.

**Carla L. Brown–Harward, Law Offices of Carla L. Brown–Harward, William P. Jacobson, William P. Jacobson, P.A., L & G GP, Inc., and Lawrence LeNeve Defendants.**

Bankruptcy No. 01–32458–BKC–PGH.

Adversary No. 01–3100–BKC–PGH–A.

United States Bankruptcy Court, S.D. Florida.

Dec. 4, 2001.

---

Alvin S. Goldstein, Robert C. Furr, Boca Raton, FL, William P. Jacobson, West Palm Beach, FL, for debtor.

Carla L. Brown–Harward, West Palm Beach, FL, for L&G GP, Inc. and W. Lawrence LeNeve.

Peter M. Arnold, N. Palm Beach, FL, Michael R. Bakst, Craig I. Kelley, L. Louis Mracheck, Jon L. Swergold, West Palm Beach, FL, James E. Copeland, Palm Beach Gardens, FL, Brad Culverhouse, Ft. Pierce, FL, Phil A D'Aniello, Roy S. Kobert, Orlando, FL, Robert A. Schatzman, Barry L. Simons, Miami, FL, Andrew D. Zaron, Ft. Lauderdale, FL, for creditor.

L&G GP, Inc. Ft. Lauderdale, FL, pro se.

### MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on September 10, 2001 upon Indiantown Realty Partners, Limited Partnership (the "Debtor") and Carla L. Brown–Harward, Law Offices of Carla L. Brown–Harward, William P. Jacobson, and William P. Jacobson, P.A.'s (the "Defendants") Cross–Motions for Summary Judgment. On September 24, 2001, the Debtor filed a Response to the Defendants' Motion for Summary Judgment (the "Debtor's Response"). Likewise, on September 24, 2001, the Defendants filed a Response to the Debtor's Motion for Summary Judgment (the "Defendants' Response"). On September 25, 2001, the Debtor and the Defendants filed a Joint Stipulation of Facts (the "Stipulation of Facts"). Having carefully reviewed the Cross–Motions for Summary Judgment, the Debtor's Response, the Defendants' Response, and the Stipulation of Facts, the Court hereby enters the following findings of fact and conclusions of law.

### FINDINGS OF FACT

On May 11, 2001, Indiantown Realty Partners, LP (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Code, the Debtor continues to operate its business as debtor in possession. Prior to the bankruptcy filing, the Debtor, by and through its then general partner, L & G GP, Inc. ("L & G") was engaged in an arbitration with Via South Florida, LLC ("VSF"), a Limited Partner of the Debtor. Pursuant to the Arbitrator's findings, on May 3, 2001, L & G was removed as general partner of the Debtor and replaced by Eastern Alliance, LLC ("Eastern"). The sole member of VSF is James M. Moran, Jr. ("Moran"). Moran is also the managing member of Eastern.

Carla L. Brown–Harward ("Harward") represents L & G and W. Lawrence Le-

Neve ("LeNeve"), the President of L & G, both personally and in connection with his business related interests. Harward also represented the Debtor prior to the removal and replacement of L & G as general partner of the Debtor.

Around the same time that the arbitration case was filed, other litigation was commenced by third parties, including VSF and Moran, involving LeNeve and his then affiliated, owned, and controlled entities, including the Debtor. In this additional litigation, Harward represented LeNeve both personally, and in connection with his business related interests. Presently, Harward continues to represent LeNeve, his affiliated, owned, and controlled entities, and other persons aligned with LeNeve.

Prior to the removal of L & G as the general partner of the Debtor, William P. Jacobson ("Jacobson") represented the Debtor, L & G, and LeNeve in connection with real estate related transactions involving property owned by the Debtor.

On May 29, 2001, the Debtor filed a Complaint for Turnover of Estate Property (the "Complaint"), instituting the instant Adversary Proceeding. In the Complaint, the Debtor asserts that the Defendants have retained property of the Debtor's estate including, *inter alia*, the Debtor's books, records, and bank accounts.

On June 19, 2001, the Court entered an Order Granting in Part Debtor's Emergency Motion for Turnover of the Debtor's Books, Records, Bank Accounts and Other Files. Pursuant to this Order, the Defendants turned over all files and documents in their possession relating to the Debtor not subject to any objection and provided the Debtor with a privilege log of documents not turned over.

The Cross–Motions for Summary Judgment pertain to those files and documents that the Defendants have chosen not to turn over to the Debtor, claiming that those documents are subject to the attorney-client privilege. In their Motion for Summary Judgment, the Defendants seek a determination that under the common-law attorney-client and work-product privileges, the files in dispute are immune from discovery, and therefore shall not be turned over to the Debtor. Conversely, the Debtor's Motion for Summary Judgment asserts that the documents at the heart of this lawsuit are not covered by either the attorney-client privilege or the work-product privilege. As such, the Debtor is asking this Court to enter an order requiring the Defendants to turnover all documents claimed as privileged.

### *CONCLUSIONS OF LAW*

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(b)(1), and 157(b)(2)(I). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056(c), provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rice v. Branigar Org., Inc.*, 922 F.2d 788 (11th Cir.1991); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir.1987); *In re*

*Pierre,* 198 B.R. 389 (Bankr.S.D.Fla.1996). Rule 56 is based upon the principle that if the court is made aware of the absence of genuine issues of material fact, the court should, upon motion, promptly adjudicate the legal questions which remain and terminate the case, thus avoiding the delay and expense associated with a trial. *See United States v. Feinstein,* 717 F.Supp. 1552 (S.D.Fla.1989). In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed R. Civ. P. 1). "Summary judgment is appropriate when, after drawing all reasonable inference in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broadcasting, Co., Inc.,* 844 F.2d 988, 992 (2d Cir.1988).

The legal standard governing the entry of summary judgment has been articulated by the United States Supreme Court in *Celotex* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Celotex* and *Anderson,* the Supreme Court focused on the question of what constitutes a genuine issue of material fact within the meaning of Rule 56. In *Celotex,* the Court held

that the moving party may satisfy the burden imposed by Rule 56 in two ways: the moving party may submit affidavit evidence that negates an essential element of the non-moving party's claim and/or the moving party may demonstrate that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See Celotex,* 477 U.S. at 328, 106 S.Ct. 2548.

In *Anderson,* the Court stated that the standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which provides that the trial judge must direct a verdict if there can be but one reasonable conclusion as to the verdict. *See Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The Court explained that the inquiry under summary judgment and directed verdict are the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

In order to defeat a motion for summary judgment under this standard, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *See id.* at 252, 106 S.Ct. 2505. Rule 56 must be construed not only with regard to the party moving for summary judgment but also with regard to the non-moving party and that party's duty to demonstrate that the movant's claims have no factual basis. *See id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* Thus, the non-moving party must establish the existence of a genuine issue of material fact and may not rest

upon its pleadings or mere assertions of disputed fact to prevent a court's entry of summary judgment. *See First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Resolution Trust Corp. by the FDIC v. Clark*, 741 F.Supp. 896 (S.D.Fla.1990); *In re Pierre*, 198 B.R. 389 (Bankr.S.D.Fla. 1996).

## I. The Documents in Dispute Are Not Subject to the Attorney–Client Privilege.

In Florida, the privilege afforded to the communications between an attorney and his client is set forth in section 90.502 of the Florida Statutes. The scope of the attorney-client privilege is measured by this statutory directive. Specifically, at issue in this case, is § 90.502(4)(e). Section 90.502(4)(e) states that there is no lawyer-client privilege when:

> A communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.

The case of *Transmark, USA, Inc. v. State of Florida*, 631 So.2d 1112 (Fla. 1st DCA 1994), is illustrative to the principles at issue in the present case. Transmark was a holding company with numerous subsidiaries. One of the subsidiaries, which was involved in the insurance industry, became statutorily insolvent. *Id.* at 1113. As a result, a court-appointed receiver took control of the subsidiary. The receiver sued Transmark, former officers and directors of both Transmark and the subsidiary, and outside professionals providing services to the subsidiary. As part of its discovery, the receiver requested production of documents from the attor-neys who had represented jointly Transmark and the subsidiary. *Id.* at 1115. The attorneys refused to turnover the documents, citing attorney-client privilege. In affirming the trial court's ruling that no such privilege applied, the First District Court of Appeal stated that there was "competent, substantial evidence" to support the finding that the attorneys represented Transmark and the subsidiary jointly in matters pertinent to the transactions at issue in the receiver's complaint. *Id.* at 1117. Furthermore, the court stated that "[t]here was no expectation of confidentiality among the various companies in the Transmark family." *Id.* As such, the court held that the attorney-client privilege could not be asserted because the material in question met the statutory exception to the attorney client privilege contained in § 90.502(4)(e).

▮ As this Court has stated numerous times in the past, "when the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Bakst v. WRH Mortgage, Inc. (In re Jackie Johns, DMD, P.A.)*, 267 B.R. 901, 905 (Bankr. S.D.Fla.2001) (quoting *Hott Interiors, Inc. v. Fostock*, 721 So.2d 1236, 1238 (Fla. 4th DCA 1998)).

▮ In the instant case, it is an undisputed fact that the Defendants represented the Debtor, LeNeve, and L & G jointly in matters relating to the Debtor. During the time in which the Defendants represented these parties, documents prepared by the Defendants on the parties behalf were clearly privileged as to third parties. However, the Debtor now seeks to waive this privilege, and possibly offer these documents at a civil proceeding as contemplated by § 90.502(4)(e). From this

Court's reading of the statute, it appears that the documents in question meet the statutory exception to the attorney-client privilege contained in § 90.502(4)(e). Accordingly, the Court finds that the documents in dispute are not subject to the attorney-client privilege.

## II. The Joint Defense Doctrine is Not Applicable to the Case *Sub Judice.*

■■■■■ In their Motion For Summary Judgment, the Defendants assert that the documents in question are not discoverable pursuant to the "joint defense" doctrine.[1] This doctrine establishes an exception to the general rule that the attorney-client privilege is waived upon the voluntary disclosure of the privileged information to a third party. The joint defense doctrine allows parties who share unified interests to exchange privileged information to adequately prepare their cases without losing the protection afforded by the privilege. *See Visual Scene, Inc. v. Pilkington Bros.,* 508 So.2d 437, 440 (Fla. 3d DCA 1987). Under this doctrine, "clients and their respective attorneys sharing common litigation interests may exchange information freely among themselves without fear that by their exchange they will forfeit the protection of the [attorney-client] privilege." *Id.*

■■■ Axiomatic to the joint defense doctrine is the existence of multiple parties. *A fortiori,* for this doctrine to apply there must also be multiple attorneys. The court in *Visual Scene* states that:

> [w]here one party in such a relationship makes a statement to the attorney for another party to the relationship, for the

limited purpose of the "pooled information" situation, the attorney for one becomes the attorney for the other. Thus the confidentiality enjoyed by a client with his own attorney is extended to communications with any attorney representing another in the group. *Id.* at 440 n. 3.

■■■ It is quite obvious that the court in *Visual Scene* contemplates the sharing of information between at least two attorneys. In the present case, there is only one attorney sharing information with her multiple clients. The communications in question were not between the Defendant Attorneys, Harward and Jacobson. Rather, the disputed communications were between each of the Defendants individually, and their respective clients; namely, the Debtor, L & G, and LeNeve. As such, the joint defense doctrine does not apply to the current proceeding.

## III. The Documents in Dispute Are Not Subject to the Work–Product Privilege.

■■■ The Defendants' final attempt at protecting the documents from discovery is by asserting the work-product privilege. Whereas the attorney-client privilege is designed to protect the confidential relationship between the client and his counsel, the work-product privilege is designed to promote the adversary system by protecting an attorney's trial preparations from an *opposing party.* *See Visual Scene,* 508 So.2d at 442. Supreme Court Justice Robert H. Jackson's rationale behind the work-product privilege has become ingrained in the minds of countless first-year law students: "[d]iscovery was

---

1. The "joint defense" doctrine, or exception to the doctrine of waiver of privilege, is also called the "common interests" or "pooled information" doctrines. It is most often referred to as the "joint defense" doctrine be-

cause its most frequent application is to co-defendants defending against civil or criminal charges. *Schachar v. American Academy of Ophthalmology,* 106 F.R.D. 187 (N.D.Ill. 1985).

hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the *adversary*." *Hickman v. Taylor*, 329 U.S. 495, 516, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (Jackson, J. concurring) (emphasis added).

In the present case, the Debtor is not trying to "borrow wits" of its adversary; the Debtor is simply trying to obtain work-product from its own prior counsel. Accordingly, the Court finds that the work-product privilege is inapplicable to this Adversary Proceeding.

### IV. The Present Case Illustrates the Pitfalls of Joint Representation.

Lastly, the Debtor's Response raises the ethical considerations involved in multiparty representation. Unfortunately, the instant case illustrates one of the pitfalls of joint-representation. One would hardly debate the use of separate attorneys in a divorce action because the interests of each party are clearly in conflict. *See* Connolly Oyler, *Avoiding Conflicts in Estate Planning: A Divorce Lawyer's Perspective*, Prob. & Prop., Nov.-Dec. 2001, at 32. By contrast, in the present case the use of one lawyer appears advantageous at first blush. The use of just one lawyer appears both economical and pragmatic. However, as this case further demonstrates, there is an undeniable need for separate counsel.

In the event of litigation between or among the joint clients, under Florida Statutes § 90.502(4)(e) the attorney-client privilege will no longer apply. Furthermore, once a conflict arises, the attorney will no longer be able to represent either party in connection with the legal dispute. *See* Model Rules of Professional Conduct Rule 2.2 cmt. 4 (1983). While the Court does not pass judgment on the ethical considerations raised by the case *sub judice*, it is suffice to say that similarly situat-

ed attorneys should heed caution when jointly representing their clients.

### CONCLUSION

For the reasons stated in this Opinion, the Court finds that under Florida Statutes § 90.502(4)(e) the documents and files in dispute are not subject to the attorney-client privilege. Having found that the communications at issue were between one attorney and her joint-clients, the Court finds that the joint-defense doctrine is inapplicable to this Adversary Proceeding. Finally, having found that the Debtor is trying to obtain files from his own counsel, rather than an adversary's counsel, the Court finds that the attorney work-product is likewise inapplicable.

### ORDER

In accordance with the foregoing analysis and being otherwise fully advised in the premises, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. The Debtor's Motion for Summary Judgment is **GRANTED**

2. The Defendants' Motion for Partial Summary Judgment is **DENIED.**

3. The Defendants shall turnover to the Debtor all items previously claimed as privileged under the attorney-client privilege and attorney work-product privilege.

4. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate Final Judgment incorporating these findings of fact and conclusions of law will be entered contemporaneously herewith.