# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case Nos. 6D2023-3769, 6D2023-3789
CONSOLIDATED
Lower Tribunal No. 2023-CA-002001-0001-XX

_____

BREANDEN BENESCHOTT,

Appellant,

v.

TOPTAL, LLC, TASO DU VAL, and DENIS GROSZ,

Appellees.

_____

Appeal from the Circuit Court for Collier County.
Ramiro Mañalich, Judge.

April 17, 2025

GANNAM, J.

These consolidated cases arise from an interstate discovery action to enforce a Nevada, nonparty subpoena issued by the Clerk of the Circuit Court for Collier County, Florida. Appellant, Breanden Beneschott, seeks our review of an order denying his privilege claims and compelling his production of documents to Appellees Toptal, LLC and Taso Du Val (the "Toptal Parties"). The order, enforcing a subpoena under the Uniform Interstate Depositions and Discovery Act

("UIDDA"), § 92.251, Fla. Stat. (2020), is a final order for purposes of our appellate jurisdiction under Florida Rule of Appellate Procedure 9.030(b)(1)(A). *See Greenlight Fin. Servs., Inc. v. Union Am. Mortg., Inc.*, 971 So. 2d 983, 984 & n.1 (Fla. 3d DCA 2008). Florida law governs our review. *Id.* at 985; § 92.251(5), Fla. Stat. Because it was error for the trial court to deny Beneschott's privilege claims without first conducting an in camera inspection of the disputed documents, we reverse.

I.

Du Val is the owner and CEO of Toptal, LLC. Appellee Denis Grosz is a former financial backer and advisor of Toptal, and Beneschott is Toptal's former Chief Operating Officer. Following Toptal's founding in 2010, various business disputes arose among the parties. These disputes intensified from 2018 to 2020, during which time Toptal terminated Beneschott; Grosz formed a rival company, Mechanism Ventures, and hired Beneschott as its CEO; Beneschott and the Toptal Parties sued each other over his employment and termination; and the Toptal Parties sued Grosz in Nevada. In 2021, the Toptal Parties joined Mechanism Ventures as a defendant in their Nevada lawsuit against Grosz.

Also in 2021, the Toptal Parties commenced their UIDDA action in Collier County, Florida, obtaining issuance of a nonparty subpoena to Beneschott on the authority of the Nevada trial court. Beneschott produced approximately 10,000

2

documents but withheld 750 documents as privileged. Meanwhile, the Toptal Parties litigated a similar production request with Grosz and Mechanism Ventures in the Nevada litigation, challenging similar privilege claims. On March 3, 2023, the discovery commissioner appointed by the Nevada court entered a forty-page recommended order upholding, with detailed analysis, many of the Grosz and Mechanism Ventures privilege claims covering the same documents or categories of documents claimed to be privileged by Beneschott here. The Toptal Parties did not object to the commissioner's recommended order, and the Nevada trial judge confirmed and adopted it.[1]

Over two years after issuance of the Florida nonparty subpoena and one month before the close of fact discovery under the Nevada court's pretrial order, the Toptal Parties challenged Beneschott's privilege assertions in the Florida UIDDA proceeding with a motion to compel production. The Toptal Parties set a hearing on the motion for October 18, 2023—four months after fact discovery had closed and just two weeks before the trial was scheduled to begin on November 1, 2023. On October 26, the Florida trial court entered its written order denying Beneschott's privilege claims for approximately 360 documents and compelling Beneschott to

---

[1] The Toptal Parties argued to the court below that resolution of their challenges to Beneschott's privilege claims would be the same under either Nevada or Florida law, but also argued the court should disregard the Nevada court's discovery order—to which they did not object—upholding similar privilege claims.

produce them. In anticipation of the order, Beneschott petitioned this Court for certiorari review on October 25 (Case No. 6D2023-3769), and then appealed the written order on October 27 (Case No. 6D2023-3789). We consolidated the cases and ordered expedited briefing, and we administratively stayed the trial court's order pending our review.

## II.

Beneschott claims on appeal, as he did below, that the disputed documents are protected from disclosure by the attorney-client privilege and work product doctrine, and that the trial court should have inspected the documents in camera before categorically denying his privilege assertions and ordering production. "Whether a privilege exists, as well as its parameters, is subject to de novo review." *Traffanstead v. State*, 290 So. 3d 985, 987 (Fla. 1st DCA 2019). We agree that it was error for the trial court to categorically deny Beneschott's privilege claims without inspecting the disputed documents in camera.

## A.

The denied privilege claims at issue cover two categories of documents held by Beneschott. First are the communications contained in a Slack business messaging[2] thread between Beneschott and Grosz, which Beneschott claims are

---

[2] *What is Slack?*, Slack, https://slack.com/help/articles/115004071768-What-is-Slack (last visited Apr. 15, 2025).

protected from disclosure by the attorney-client privilege, work product doctrine, and common interest privilege.[3] The Slack messages occurred while Beneschott was CEO of Grosz's company, Mechanism Ventures, and included legal advice given to Grosz by attorneys representing him and the company concerning potential litigation with the Toptal Parties. The messages also occurred while Beneschott was still in litigation with Toptal, and seven months before the Toptal Parties commenced the current Nevada litigation against Grosz. The second category of documents at issue comprises communications involving Beneschott and various business and legal advisors employed by the Fifth Avenue Family Office ("FAFO"), which Beneschott claims are protected by the attorney-client privilege and work product doctrine. The FAFO communications include legal advice concerning Beneschott's separation from Toptal and the ensuing litigation and settlement of claims between them, occurring between November 2018 and January 2020, part of which time Beneschott was the CEO of Grosz's company, Mechanism Ventures.

The trial court denied attorney-client privilege and work product protection for all the Slack messages without differentiation, stating in its order only that there was no lawyer on the message thread and that the messages occurred more than seven months before the Toptal Parties sued Grosz, and more than eighteen months

---

[3] The trial court did not address Beneschott's common interest privilege claim. Beneschott raises it on appeal, but our resolution of the appeal does not require us to address it.

before they added Mechanism Ventures as a defendant. The court also denied attorney-client privilege and work product protection for all the FAFO communications, noting that the participants variously included both non-attorneys and a FAFO in-house attorney, and that Beneschott did not indicate whose work product is reflected in the documents or substantiate his assertions that they were prepared in connection with pending or anticipated litigation. These denials do not comport with the standards governing the attorney-client privilege and work product doctrine.

B.

"The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) [hereinafter *Southern Bell*] (citing § 90.502(1)(b), Fla. Stat. (1991)). The privilege covers communications to third parties "to whom disclosure is in furtherance of the rendition of legal services to the client" and "[t]hose reasonably necessary for the transmission of the communication." § 90.502(1)(c), Fla. Stat. "This privilege covers communications on legal matters between corporate counsel and corporate employees," *Shell Oil Co. v. Par Four P'ship*, 638 So. 2d 1050, 1050 (Fla. 5th DCA 1994), and dissemination of received legal advice to other employees who need to know it because of its relevance to their duties, *see Southern Bell*, 632 So. 2d at 1383.

The work product doctrine limits "discovery of documents . . . prepared in anticipation of litigation . . . by or for [a] party or . . . that party's representative, including that party's attorney, consultant, . . . or agent." Fla. R. Civ. P. 1.280(c)(4).[4] Documents containing "fact work product," *Southern Bell*, 632 So. 2d at 1384, are discoverable "only on a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fla. R. Civ. P. 1.280(c)(4). Even when the required showing is made, however, "the court must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fla. R. Civ. P. 1.280(c)(4). Thus, "[w]hereas fact work product is subject to discovery upon a showing of 'need' and 'undue hardship,' opinion work product generally remains protected from disclosure." *Southern Bell*, 632 So. 2d at 1384 (citations omitted).

The creation of protected work product may involve various party representatives, "including that party's attorney, consultant, . . . or agent," or it may involve the party alone without any representatives. *See Snyder v. Value Rent-A-Car*, 736 So. 2d 780, 781 (Fla. 4th DCA 1999) ("There is no requirement in this rule

---

[4] Rule 1.280(c) was previously designated Rule 1.280(b). *See In re Amends. to Fla. R. Civ. P.*, 386 So. 3d 497, app. at 502 (Fla. 2024) (effective Jan. 1, 2025).

7

that for something to be protected as work product, it must be an item ordered to be prepared by an attorney."); *Cowan v. Gray*, 348 So. 3d 630, 633 (Fla. 5th DCA 2022) ("It is irrelevant for work product purposes that Petitioners prepared their notes at their own behest and without counsel's direction." (citing *Snyder*, 736 So. 2d at 781)). "Work-product protection extends to information gathered in anticipation of litigation by corporate non-attorney employees." *Millard Mall Servs., Inc. v. Bolda*, 155 So. 3d 1272, 1275 (Fla. 4th DCA 2015). The test is "whether the document was prepared in response to some event which foreseeably could be made the basis of a claim in the future." *Marshalls of MA, Inc. v. Minsal*, 932 So. 444, 446–47 (Fla. 3d DCA 2006). Such documents "will not lose their protected status even if they were also generated for another purpose," *id.* at 446, and disclosure in anticipation of litigation "does not waive the work product privilege unless it is 'inconsistent with the maintenance of secrecy from the disclosing party's adversary . . . [that is, that it] substantially increases the possibility of an opposing party obtaining the information.'" *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 442 (Fla. 3d DCA 1987) (alteration in original) (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)).

Rule 1.280 requires the party asserting a claim of attorney-client privilege or work product doctrine to "make the claim expressly and . . . describe the nature of the . . . communications . . . not produced or disclosed in a manner that, without

8

revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fla. R. Civ. P. 1.280(c)(6). When a party makes this facial showing that documents are protected from disclosure, "the party seeking disclosure bears the burden of proving that they are not," *Shell Oil Co.*, 638 So. 2d at 1050, and "the court must hold an in camera inspection of the discovery material at issue in order to rule on the applicability of the privileges," *Allstate Ins. Co. v. Walker*, 583 So. 2d 356, 358 (Fla. 4th DCA 1991). *But see Cowan*, 348 So. 3d at 633 (holding no in camera inspection necessary to *uphold* privilege claim where challenge to claim is insufficient as matter of law).

## C.

Under the foregoing standards, the availability of the attorney-client privilege does not depend on the participation of an attorney in every communication for which the privilege is claimed. Nor does the applicability of the work product doctrine depend on the participation of an attorney in every communication or document for which protection is claimed, or the commencement of anticipated litigation within a certain period of time—or ever.

Thus, communications between a new company's owner and CEO about legal advice previously received by the owner may be privileged. *See Southern Bell*, 632 So. 2d at 1383. And when the communications concern a rival company that has a long-running dispute with the new company's owner, and has recently sued and

settled with the new company's CEO, those communications may be protected work product if they "respon[d] to some event which foreseeably could be made the basis of a claim in the future," *Marshalls of MA, Inc.*, 932 So. at 446–47, even if made months before any such claim ripens into litigation. These are the facts substantiating Beneschott's privilege and work product claims over the Slack thread between him and Grosz, as shown to the trial court by Beneschott's privilege log and supporting declarations that the Toptal Parties did not refute.

Beneschott's privilege log and unrefuted declarations similarly substantiate his privilege and work product claims over the FAFO communications. Beneschott explained the participation of attorney and non-attorney representatives in communications about Beneschott's termination by the Toptal Parties and subsequent litigation and settlement with them. And, like the Slack thread, some of the FAFO communications occurred after Beneschott had begun working for Grosz as Mechanism Venture's CEO, when, according to the Toptal Parties, "Beneschott had a front row seat to, and participated in" the events leading to the Toptal Parties' filing suit against Grosz and Mechanism Ventures.

Beneschott substantiated his privilege claims with a privilege log and unrefuted declarations. "That is sufficient to warrant an *in camera* inspection in this case." *RC/PB, Inc. v. Ritz-Carlton Hotel Co., L.L.C.*, 132 So. 3d 325, 327 (Fla. 4th DCA 2014). Under the circumstances here, it was error for the trial court to

categorically deny the claims and order production without first inspecting the documents in camera.[5]

## III.

We reverse the trial court's order on the merits and remand for further proceedings consistent with this opinion. Our decision does not foreclose the trial court's considering the enforceability of a UIDDA subpoena for pretrial discovery after conclusion of the out-of-state trial or the impact of any other developments in the parties' ongoing litigation.

REVERSED and REMANDED.

WOZNIAK and BROWNLEE, JJ., concur.

Laura Renstrom, Michael M. Gropper and Michael B. Decembrino, Jr., of Holland & Knight LLP, Jacksonville, and Stephen P. Warren, of Holland & Knight LLP, Miami, for Appellant.

Kelly G. Price and Joshua A. Hajek, of Dentons Cohen & Grigsby, P.C., Naples, for Appellees, Toptal, LLC and Taso Du Val.

No Appearance for Appellee, Denis Grosz.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF TIMELY FILED

---

[5] Beneschott is entitled to relief from the trial court's production order under either the de novo appellate standard or the more stringent certiorari standard requiring departure from the essential requirements of the law. *See, e.g.*, *Allstate Ins. Co.*, 583 So. 2d at 358 (Fla. 4th DCA 1991) (granting certiorari review of trial court order denying privilege claims and compelling production without in camera inspection); *Cowan*, 348 So. 3d at 632–33 (same).